UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NEWBORN BROS., INC.,

                    Plaintiff,

        v.

ALBION ENGINEERING CO.,

                    Defendant.

HONORABLE NOEL L. HILLMAN

CIVIL ACTION NO. 12-2999

**OPINION**
**\*FILED UNDER TEMPORARY SEAL\***

**APPEARANCES:**

MADDEN & MADDEN, P.A.
By:  John-Paul Madden, Esq.
     Timothy R. Bieg, Esq.
108 Kings Highway East
Haddonfield, New Jersey 08033

        and

NEVILLE PETERSON LLP
By:  Michael K. Tomenga, Esq.
1400 16th Street, N.W., Suite 350
Washington, D.C. 20036
          Counsel for Plaintiff Newborn Bros., Inc.


ARCHER & GREINER, P.C.
By:  Kerri E. Chewning, Esq.
One Centennial Square
Haddonfield, New Jersey 08033

        and

CAESAR, RIVISE, BERNSTEIN, COHEN & POKOTILOW, LTD.
By:  Martin L. Faigus, Esq.
     Michael J. Berkowitz, Esq.
1635 Market Street, 11th Floor
Philadelphia, Pennsylvania 19103
          Counsel for Defendant Albion Engineering Co.

1

**HILLMAN**, United States District Judge:

This is an unfair competition suit pursuant to the Lanham Act, 11 U.S.C. § 1125(a), and New Jersey common law.[1]  Plaintiff, Newborn Bros., Inc., a competitor of Defendant Albion Engineering Co., asserts that Albion falsely advertised its products as made in the U.S.A.

Presently before the Court are the parties' cross motions for summary judgment.[2]  For the reasons stated herein, both motions will be denied.

### I.

Newborn and Albion are competitors in the United States market for hand tools, including but not limited to, various models of caulk dispensing guns and accessories, such as spatulas. (Pl's Statement of Undisputed Facts ("SUF") ¶ 7; Def's SUF ¶ 5, 12)  Newborn manufactures its products in Taiwan. (Def's SUF ¶ 5, 6; Pl's SUF ¶ 8)  Albion used to manufacture its products in the United States, but starting in 2001, it began to manufacture at least some of its products in Taiwan. (Pl's SUF ¶ 33-34, 37-38)

---

[1]  The Complaint asserts only two counts: a Lanham Act violation and a common law unfair competition claim.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

[2]  The concurrently pending Motion to Strike Plaintiff's Expert will be denied in part and dismissed without prejudice in part for the reasons set forth in a separate opinion issued on even date herewith.

*B-Line Dispensing Guns*

Albion imported finished B-Line dispensing guns from Taiwan beginning in late 2001. (Pl's SUF ¶ 34-38)  The guns were marked "USA Manufacturer." (Pl's SUF ¶ 93)  In June, 2012, "U.S. Customs and Border Protection directed Albion to add a Made in Taiwan label in close proximity (next to above or below) the marking 'USA Manufacturer' on the B-line products to avoid consumer deception." (Pl's SUF ¶ 93)

*Special Deluxe and Deluxe Dispensing Guns*

Components of Albion's caulk guns were "stamped 'Phila., PA. U.S.A.'" even though they were made in Taiwan. (Pl's SUF ¶ 55)  Those parts were then shipped to the United States, incorporated into the assembled dispensing gun and a "made in USA" label was placed on the finished product. (Pl's SUF ¶ 56)

*Spatulas*

In 2008, Albion began importing, from Taiwan, Classic line and Streamline spatulas. (Pl's SUF ¶ 69)  Newborn contends that in Albion's Owner's Guides, handbooks and website, Albion made blanket statements that all of its products were made in the USA. (Pl's SUF ¶ 75-77, 80-87)

## II.

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)(citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004)(citing *Anderson*, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.");

4

*see also Singletary v. Pa. Dept. of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof.")(citing *Celotex*, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s.]'" *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[ ] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Cooper v. Sniezek*, 418 F. App'x 56, 58 (3d Cir. 2011)(citing *Celotex*, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 257.

### III.

### A. Newborn's claim for monetary relief

In a suit for money damages, as opposed to injunctive relief, to prevail on a claim for false advertising, a Lanham Act plaintiff must prove: 1) that the defendant has made false or misleading statements as to his own product; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there was an injury to the plaintiff in terms of declining sales or loss of good will. *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 91-92 (3d Cir. 2000); *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648 (3d Cir. 1958).[3]

### (1) False or misleading statements

As to the first element, a plaintiff must establish that the advertisements at issue are "either (1) literally false or (2) literally true or ambiguous, but ha[ve] the tendency to deceive consumers." *Groupe SEB United States, Inc. v. Euro-Pro Operating*

---

[3] The parties' briefs make no distinction between the Lanham Act claim and the unfair competition claim under New Jersey common law. The legal analysis is the same for both claims. *See Smart Vent Prods. v. Crawl Space Door Sys.*, 2016 U.S. Dist. LEXIS 108052 at *16 n.10 (D.N.J. Aug. 15, 2016)(stating that "unfair competition claims under New Jersey statutory and common law mirror unfair competition claims under § 43(a) of the Lanham Act," and collecting cases).

*LLC*, 774 F.3d 192, 198 (3d Cir. 2014)(quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)).

Newborn only argues that Albion's advertisements are literally false. "[T]he test for literal falsity is simple[]: if a defendant's claim is untrue, it must be deemed literally false." *Castrol Inc. v. Penzoil Co.*, 987 F.2d 939, 944 (3d Cir. 1993). The record evidence raises triable issues of material fact as to this element.

As an overview, Albion, over time, sold some products made overseas and some made in the United States.  At other points, it assembled final products in the United States from both foreign and domestic components.  Factual and legal complexities arise from those practices.  Moreover, Alboin used various hangtags, labels, markings on boxes, and written brochures placed in boxes, and changed both its product lines and labeling practices over time.  All these factors combine to make a simple determination of which statements were false, when, and as to what product, a daunting and complicated task unsuited for summary judgment.

While the Court has little doubt that a jury will find one or more of Albion's country of origin statements literally false, the full extent of Albion's false labeling is unclear from the current record.  Given the uncertainty and ambiguity on this issue, Newborn should lay out its proofs, subject those proofs to the

adversarial process, and allow the jury to make specific findings with regard to specific products at specific times.  By way of example only, the Court notes the following.

*B-Line Dispensing Guns*

Albion imported finished B-Line dispensing guns from Taiwan beginning in late 2001. (Pl's SUF ¶ 34-38)  The guns were marked "USA Manufacturer." (Pl's SUF ¶ 93)  In June, 2012, "U.S. Customs and Border Protection directed Albion to add a Made in Taiwan label in close proximity (next to above or below) the marking 'USA Manufacturer' on the B-line products to avoid consumer deception." (Pl's SUF ¶ 93)

This evidence is sufficient to support a finding of literal falsity, but it is not so unequivocal that it supports granting Newborn's Motion for Summary Judgment on this issue.[4]  Viewing the evidence in the light most favorable to Albion, the "USA Manufacturer" designation could be found true, insofar as: (a) Albion was, at one time, manufacturing B-Line guns in the United States, and (b) continued to manufacture other products in the United States at the time the imported B-Line guns were stamped "USA Manufacturer."  In other words, a factfinder could find that Albion was historically a "USA Manufacturer" of B-Line guns, and

---

[4] Albion, in support of its own motion for summary judgment, does not argue that the advertisements are not literally false, although in opposition to Newborn's motion for summary judgment, it does.

8

still was, during the relevant time period, a "USA Manufacturer" in the general sense that it manufactured some of its products in the United States.

*Special Deluxe and Deluxe Dispensing Guns*

Components of Albion's caulk guns were "stamped 'Phila., PA. U.S.A.'" even though they were made in Taiwan. (Pl's SUF ¶ 55) Those parts were then shipped to the United States, incorporated into the assembled dispensing gun and a "made in USA" label was placed on the finished product. (Pl's SUF ¶ 56)

These statements, too, could be found true.  Albion is undisputedly physically located in Philadelphia, and the guns were assembled in the United States. *See* Oxford English Dictionary Online, definition of "make" – "To produce (a material thing) by combination of parts, or by giving a certain form to a portion of matter, to manufacture; to construct, assemble, frame, fashion." *available at* http://www.oed.com/view/Entry/112645#eid38203381.

*Spatulas*

In 2008, Albion began importing, from Taiwan, Classic line and Streamline spatulas. (Pl's SUF ¶ 69)  Newborn contends that in Albion's Owner's Guides, handbooks and website, Albion made blanket statements that all of its products were made in the USA. (Pl's SUF ¶ 75-77, 80-87)

Albion has raised an issue of material fact as to whether Newborn actually did make such blanket statements as to the

spatulas.  For example, Newborn relies on evidence that the Owners Guides were only packed with the dispensing guns (Def's SUF ¶ 103), which, for the reasons stated above, could be found true.

In sum, the Court concludes that what statements were made and when, and in regard to what products, should be subject to a jury's factual determinations after instruction on the applicable legal standards.

**(2)  Deception or tendency to mislead**

The parties dispute the implications for the legal analysis once literal falsity has been established.  At a minimum, it cannot be disputed that "[p]roof of literal falsity relieves the plaintiff of its burden to prove actual consumer deception" when a plaintiff seeks only injunctive relief. *Groupe SEB United States*, 774 F.3d at 198.

Albion asserts that the presumption of consumer deception is limited to injunction suits and therefore would not apply to this suit insofar as Newborn seeks monetary damages.  Newborn, on the other hand, asserts that the presumption does apply to its suit for damages.

The Court need not decide the issue, however, because Newborn does not have to resort to the presumption of deception; it has evidence of deception in the form of customer testimony.  George Hall, in his position as purchasing manager for a wholesale distributor which purchased both Albion and Newborn products,

10

states "I always understood Albion's products to be 'Made in USA'
based on statement [sic] on Albion's web site, its product
literature, and its other marketing activity." (Pl's Ex. XX)[5]  This
evidence raises a triable issue of material fact as to whether
Newborn's customers were deceived by Albion's allegedly false
statements.

**(3)  Materiality**

There is ample record evidence that the statements at issue
were material to Newborn's customers. *See, e.g.,* Pl's Ex. 2,
Deposition of Peter Chang (testifying that even though Newborn
made a superior product "it turned out to be that the market does
not accept overseas production.  They are so accustomed to made in
USA Deluxe gun.  So we . . . spent a lot of money but still [were]
unable to crack that market in those days."); Pl's Ex. A,
Deposition of Albert Lee, p. 296 ("we polled . . . a group of the
biggest industrial distributors [of hand tools] in the United

---

[5]  Albion objects to Newborn's reliance on Mr. Hall's Declaration
arguing that (1) the declaration "cannot be presented in a form
that would be admissible at trial" because, among other things,
the declaration is hearsay for which no exception applies, and
"Mr. Hall . . . is unavailable . . . to testify at trial;" and (2)
"[a]ny probative value of Mr. Hall's testimony is substantially
outweighed by the danger of unfair prejudice, confusion of the
issues, and potential for misleading the jury. Fed. R. Evid. 403."
(Def's Response to Pl's Statement of Undisputed Facts ¶ 124)  The
Court declines to decide such specific evidentiary issues at
summary judgment.  Should the need arise, Albion is free to raise
these issues in an appropriate *in limine* motion prior to, or
during trial.

States. . . . I believe 47 percent said that country of origin was
very important to them."); Expert Report of Robert Wallace, p. 4-6
("FTC surveys confirm that 'Made in USA' is a strong purchase
incentive for a majority of product purchases," including
professional hand tools).

**(4)  Travel in interstate commerce**

The parties agree that the relevant products did travel in
interstate commerce.

**(5)  Injury**

Newborn argues that establishing literal falsity will give
rise to a presumption of injury.  The Court holds otherwise;
Newborn is not entitled to a presumption that Albion's allegedly
literally false statements caused it injury in the form of
diverted sales.  Accordingly, Newborn's Motion for Summary
Judgment on this ground will be denied.

Newborn's argument to the contrary confounds the concept of
injury/harm, which is an element of a false advertising claim,
with the concept of damages/remedy, which is not. *See generally
Parkway Baking Co.*, 255 F.2d at 648 (in a Lanham Act false
advertising suit for damages, distinguishing the "quantum of
damages" from "the very right to recover.").

Quoting *Sabinsa Corp. v. Creative Compounds, LLC,* 2011 U.S.
Dist. LEXIS 82001 at * (D.N.J. July 27, 2011), Newborn asserts,
"[i]n the District of New Jersey, 'a successful infringement claim

leads to a presumption of diversion [of sales].'" (Docket No. 144-1, p. 21)  This may be an accurate statement of the law with regard to the remedies analysis-- i.e., whether a plaintiff is entitled to the equitable remedy of disgorgement of profits-- once liability has been established.  Indeed, *Sabinsa* concerned solely this question after the Third Circuit reversed and remanded the case to the district court with instructions to enter judgment on liability. 2011 U.S. Dist. LEXIS at *1.  *Sabinsa* however, does not -- and cannot, given its procedural posture -- support Newborn's assertion that Newborn is not required to establish injury as an element of its false advertising claim.

*Parkway Baking* holds that a plaintiff seeking damages under the Lanham Act must make a showing that a defendant's false statements actually diverted sales.  In affirming the district court's decision to award no damages and issue no injunction, even upon a showing of literally false labeling, the Third Circuit explained,

> a plaintiff in order to make out a cause of action for damages under Section 43(a) must show not only that the defendant's advertisement is false but also this falsification actually deceives a portion of the buying public.  This does not place upon the plaintiff a burden of proving detailed individualization of loss of sales.  Such proof goes to quantum of damages and not to the very right to recover.  However, there must be a showing of some customer reliance on the false advertisement.

*Parkway Baking Co.*, 255 F.2d at 648.

The Court further explained, "Parkway has introduced no evidence that anyone who purchased [the product] with the false designation on the wrapper did so because of the false wrapper, nor is there any evidence that anyone would have refused to purchase this bread had they known of the fallacious label." *Parkway Baking Co.*, 255 F.2d at 649.  Moreover, in distinguishing monetary damages from injunctive relief, the Court observed, "as with most equitable relief by way of injunction, Section 43(a) may be asserted upon a showing of likelihood of damage without awaiting the actuality." *Id.*

Thus, this Court reads *Parkway Baking* to stand for the proposition that a competitor suing for literally false advertising and seeking monetary damages as a remedy must make a showing of actual injury.  Frequently, as asserted in *Parkway Baking* and in this suit, such injury will take the form of diverted sales. *See also, L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.*, 214 F.2d 649, 650 (3d Cir. 1954)("Plaintiff alleges that this misrepresentation caused some trade to be diverted from plaintiff to defendant and caused other trade to be lost by plaintiff as result of the mistaken impression conveyed to those familiar with the advertising of both parties that plaintiff was offering for $17.95 a dress worth only $6.95."); *see generally* 5 McCarthy on Trademarks and Unfair Competition § 27.42 (4th ed.)("If plaintiff seeks damages based upon its own lost sales or

14

upon defendant's profits, it is faced with the traditional problem
of proving an actual diversion of customers from itself to
defendant.  This is a specific application of the general rule
that plaintiff must prove causation between the false advertising
and plaintiff's damage.").[6]

That *Parkway Baking* involved a mistaken misrepresentation,
255 F.2d at 644, rather than a willful misrepresentation as
Newborn asserts here, does not change the Court's conclusion that
Newborn must put forth evidence of diverted sales.  As to this
issue, Newborn argues that *Johnson & Johnson-Merck Consumer
Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125 (3d
Cir. 1994) applies to support its position.  The Court, however,
finds *Rhone-Poulenc* inapplicable.

First, while *Rhone-Poulenc* discussed the Second Circuit's
"burden shifting presumption" of consumer deception upon a showing

---

[6]  Another injury is diminution of goodwill and reputation for
which a successful Lanham Act plaintiff could recover money
damages compensating it for "the costs of any completed
advertising that actually and reasonably responds to the
defendant's offending ads" in an attempt to rehabilitate the
plaintiff's product's reputation. *Merck Eprova AG v. Gnosis
S.p.A.*, 760 F.3d 247, 265 (2d Cir. 2014)(quoting *ALPO Petfoods,
Inc. v. Ralston Purina Co.*, 913 F.2d 958, 969 (D.C. Cir.
1990))(internal quotation marks omitted); *see generally* 1-7
Business Torts § 7.03 ("The fifth and final element [of a Lanham
Act false advertising claim] is that the plaintiff must show that
the plaintiff has been . . . injured as a result of the
defendant's false statement, either by direct diversion of sales
from itself to the defendant or by a lessening of the good will
associated with the plaintiff's products.").

of a defendant-competitor's willful intent to deceive, it expressly declined to rule on whether to adopt the presumption. 19 F.3d at 131-32. Thus, the Third Circuit did not adopt the presumption, as Newborn asserts.

More to the point, however, *Rhone-Poulenc* was an appeal from a preliminary injunction hearing. 19 F.3d at 126 ("The district court held a five-day evidentiary hearing on Johnson-Merck's motion for a preliminary injunction."). The issue of diverted sales and monetary damages was not before the Court of Appeals, *see id.* at 136, and therefore the case has no bearing on whether Newborn must put forth evidence of lost sales in support of its claim for money damages.[7]

---

[7] While the Second Circuit has applied a "presumption of injury" in a suit for money damages upon proof of literal falsity and deliberate deception, it has done so only "in the context of a two-player market." *Merck Eprova AG v. Gnosis Bioresearch S.A.,* 760 F.3d 247, 260-61 (2d Cir. 2014). The Third Circuit has not ruled on the issue, and in any event, the market at issue here undisputedly is not a two-player market. (*See* Pl's Response to Def's Statement of Undisputed Facts, ¶¶ 67-77; Newborn's Brief in Opposition to Albion's Motion for Summary Judgment, Docket No. 144-1, p. 21, 24). *See also, Vitamins Online, Inc. v. Heartwise, Inc.,* 2016 U.S. Dist. LEXIS 16355, 23-24 (D. Utah Feb. 9, 2016)("The presumption of injury for obvious competitors on a Lanham Act claim has, at best, a thin legal foundation. Because this case does not involve comparative advertising and because Vitamins Online and NatureWise are not in a two-player market, the court declines to apply a presumption of injury on the Lanham Act claim in this case."); *Gen. Steel Domestic Sales, LLC v. Chumley*, 129 F. Supp. 3d 1158, 1179 (D. Colo. 2015) ("This Court rejects the notion urged by [plaintiff] that a Lanham Act plaintiff in direct competition with a defendant can rely entirely on a presumption of injury to obtain money damages, even when the advertising in question misrepresented only the defendant's

Newborn's theory is that it lost sales (the injury) as a result of Albion's literally false representations that Albion's products were made in the U.S.A.[8], therefore Newborn is entitled to money damages in the form of Albion's disgorgement of profits (the remedy).  As just discussed, *Parkway Baking,* as well as traditional tort law concepts of causation and injury[9], require that Newborn put forth evidence that it actually lost sales to

---

product. . . . [I]n such a suit, the 'plaintiff may be only one of many competitors, and without proof of causation and specific injury each competitor might receive a windfall unrelated to its own damage.'  To hold otherwise would permit all of [defendant's] and [plaintiff's] fellow competitors to pile on as well: they, like [plaintiff], would lack any proof whatsoever of actual injury, but would merely rely on their status as competitors to presume that they, too, were injured by [defendant].  Nothing in the 'presumption of injury' line of cases can be read to suggest that the Lanham Act intends to open the spigot of money damages to all competitors whenever one of their own promulgates a self-promoting advertisement containing a literal falsehood.")(quoting *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1336 (8th Cir. 1997)).

[8]   *See* Complaint, ¶ 118 ("By falsely representing the geographic origin of its Deluxe, Special Deluxe, and B-Line dispensing guns and its caulking accessories as USA and by falsely representing itself as being the manufacturer, Albion competes unfairly with Newborn with the result that Albion's Deluxe and Special Deluxe dispensing guns, its B-Line dispensing guns, and its caulking accessories are substituted in sales that would otherwise be made by Newborn.").

[9]   *Cf. L'Aiglon Apparel*, 214 F.2d at 651 (describing a Lanham Act false advertising claim as a "statutory tort"); *Granite State Ins. Co. v. Aamco Transmissions, Inc.*, 57 F.3d 316, 321 (3d Cir. 1995)(stating that Lanham Act is derived from common law tort of unfair competition and its language parallels the protections afforded by state common law).

Albion.  Moreover, the requirement to prove this element, and to tie it specifically to literal falsehoods, adds weight to the conclusion that Newborn should be put to its proofs as to falsity as to specific dates, impacted products and the allegedly false statements accompanying those sales.

Thus, the question raised by Albion's Motion for Summary Judgment is, has Newborn put forth sufficient evidence from which a reasonable juror could conclude that it lost sales as a result of Albion's allegedly false statements?  The Court holds yes.

As already noted with respect to the materiality prong, Newborn's assertion that professional hand tool consumers prefer products that are made in the U.S.A. is supported by evidence in the record.  Therefore, a reasonable factfinder could conclude that but for Albion's allegedly false statements, customers preferring made in the U.S.A. products would not have purchased Albion's products.[10]  Such evidence alone, however, would be insufficient because it does not raise a triable issue of fact as to whether Newborn was injured, i.e., whether Newborn lost sales. In a non-two-player market, and in the absence of comparative advertising, Albion's alleged gain is not necessarily Newborn's

---

[10]  *See* Pl's Ex. I, Deposition of Dell Skluzak, p. 38, 113 ("the number one reason people -- the customers, dealers, and distributors tell me that they buy a caulking gun is country of origin;" "customers perceived Albion was made in the USA, and that's why they bought Albion guns.").

loss.  Indeed, the undisputed fact that Newborn's products also
are not made in the U.S.A. supports the conclusion that customers
preferring made in the U.S.A. products, had they known the alleged
truth about Albion's products, would have purchased neither
Albion's nor Newborn's products. *See* Pl's Ex. ZZ (results from a
survey of 15 Newborn customers in which 46.7% of the respondents
stated that they "don't buy at all or don't buy more from Newborn"
because its products are "not made in USA.").

    With respect to the heart of the issue -- whether Newborn
lost sales -- the record evidence raises a triable issue of fact.
Newborn's expert Robert Wallace, opines that Albion's false origin
claims "could have directly impacted Newborn's sales." (Wallace
Report, p. 20-21).  While this statement alone might be considered
too vague to raise a trial issue it must be viewed through the
lens of the complexities of the buying decision and ultimately
goes to weight and not admissibility.  More importantly, it
supports and lends credence to a fact witness's statement that he
would have, in fact, chosen Newborn over Albion if he had not been
misled over Albion's place of origin.

    George Hall states in his declaration, "[h]ad I known that
Albion's Deluxe, Special Deluxe and B-Line dispensing guns and
caulking accessories were made in Taiwan, I would have purchased
more products from Newborn because of their comparable features
and performance, their quality, and their favorable pricing."

19

(Pl's Ex. XX)  Thus, Newborn has raised a triable issue of fact as to whether it lost sales to Albion as a result of Albion's alleged false statements about its own products.  Accordingly, Albion's Motion for Summary Judgment will be denied.

### B.  Newborn's claim for injunctive relief

Newborn seeks a permanent injunction ordering Albion to: (1) cease the allegedly false advertising; and (2) take corrective action in the form of (a) a press release and website posting "regarding the court's decision" and (b) corrective advertisements which would state that "the products at issue are not manufactured in the United States and are made in Taiwan." (Newborn's Proposed Order, Docket No. 136-3, ¶ 16)

In opposition, Albion states that it has already removed the allegedly false advertising statements.  Newborn makes no argument in reply.  "[W]here there has been a cessation of the conduct complained of, at any time prior to judgment, it is a matter for the exercise of the discretion of the court, as to whether an injunction should issue." *Parkway Baking Co.*, 255 F.2d at 649.

In light of the disposition of the damages claim, the Court will decline to exercise its discretion to issue an injunction at this stage of the case.  Newborn may make another application at a later time if the need arises.

### IV.

20

For the reasons set forth above, Newborn's Motion for Summary Judgment, and Albion's Motion for Summary Judgment, will be denied.  An appropriate Order accompanies this Opinion.


Dated: December 20, 2016
At Camden, New Jersey              ___s/ Noel L. Hillman___
                                  **Noel L. Hillman, U.S.D.J.**

21