**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

NEWBORN BROS. CO., INC.,

        Plaintiff,        Civil No. 12-2999 (NLH/AMD)

v.                            **MEMORANDUM**
                                  **OPINION**

ALBION ENGINEERING COMPANY,

        Defendant.

---

**APPEARANCES**:

JOHN-PAUL MADDEN
TIMOTHY R. BIEG
MADDEN & MADDEN
108 KINGS HIGHWAY EAST, SUITE 200
P.O. BOX 210
HADDONFIELD, N.J. 08033-0389

    *Attorneys Plaintiff Newborn Bros. Co., Inc.*

JEFFREY M. SCOTT
KERRI E. CHEWNING
ARCHER & GREINER, PC
ONE CENTENNIAL SQUARE
P.O. BOX 3000
HADDONFIELD, N.J. 08033-0968

    *Attorneys for Defendant Albion Engineering Company.*

**HILLMAN**, District Judge

    This matter comes before the Court upon Defendant Albion Engineering Company's ("Albion") motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 52(c) and post-trial briefing on Albion's affirmative defense of unclean

hands.

The underlying action was brought against Albion by Newborn Bros. Co., Inc. ("Newborn"), which alleged false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and New Jersey common law. Central to Newborn's claims were representations made by Albion that overseas products were manufactured in the United States. On August 22, 2020, the Court issued a bench trial opinion pursuant to Federal Rule of Civil Procedure 52(a)(1), (ECF 363), holding that Albion had violated both the Lanham Act and New Jersey common law.

Albion raised five affirmative defenses in its Amended Answer: (1) failure to state a claim upon which relief may be granted, (2) laches, estoppel, and/or waiver, (3) time bar, (4) unclean hands, and (5) lack of standing. (ECF 31 at 16). Following the Court's opinion on liability, the parties were permitted to make submissions as to Albion's affirmative defenses. On February 26, 2021, the Court entered an order finding unclean hands to be the only viable affirmative defense for which the record was incomplete and granting Albion's request to present supporting evidence. (ECF 371). A related opinion followed. (ECF 372).

A bench trial was conducted on the issue of unclean hands from July 19, 2021 through July 21, 2021 and the parties were instructed to submit post-trial briefing on the defense. Most

recently, on August 29, 2022, following a status hearing, the Court ordered the parties to submit supplemental letters limited to identifying the most recent date or dates in which Newborn engaged in conduct similar to that which the Court found unlawful with respect to Albion.  (ECF 407).

The Court now issues the following memorandum opinion and order.  For the reasons set forth below, and for other good cause shown, the Court finds that Albion has demonstrated the affirmative defense of unclean hands and its motion is therefore granted in part.

I.   **Background**

The Court's bench trial opinion lays out the facts of this matter in greater detail.  (ECF 363).  Relevant here, Albion began producing dispensing caulk guns in Taiwan in late 2001 and thereafter manufactured an increasing number of its products overseas.  (Id. at 16-18).  The Court found actionable under the Lanham Act the statements "All Albion Products are Made in America," found in advertising materials including catalogs, and "All our dispensing products and accessories are designed and manufactured in the USA, from our location in Philadelphia, Pennsylvania," which appeared on Albion's website.  (Id. at 65).  In finding against Albion, the Court held that Newborn had established its entitlement to injunctive and monetary relief in the form of disgorgement.  (Id. at 102, 107-08).

3

Albion, in its briefing, asserts that "[t]he affirmative defense of unclean hands is applicable to Newborn's disgorgement claim and serves as a bar to the entirety of the relief Newborn seeks." (ECF 387 at 11). In support of its unclean hands defense, Albion has submitted multiple proposed findings of fact, including:

(1) Newborn dispensing guns have been exclusively manufactured overseas from 1990 to the present, (ECF 396 at ¶¶ 1301-04);

(2) Newborn has utilized a U.S.A. logo[1] in advertisements, including one published in the late 1990s or early 2000s, (id. ¶¶ 1305-40), and the company's former controller found the logo to be misleading, (id. at ¶¶ 1360-62);

(3) The same logo has been used on Newborn letterhead, (id. ¶¶ 1341-53), and on products with advertisements as recently as December 2001, (id. at ¶¶ 1357-59);

---

[1] The logo, as can be seen below, places Newborn's name with "U.S.A." in an outline of a map of the United States.



(ECF 387 at 1).

4

(4) A product brochure included the statement "Newborn Brothers Company is the largest caulking gun manufacturer/distributor in the United States and today distributes product in over 20 different countries," for about a year and a half beginning in 2003, (id. at ¶¶ 1354-56);

(5) Newborn trademarked its U.S.A. logo and, in a February 2007 renewal application, stated that the mark continued to be used in interstate commerce, (id. at ¶¶ 1363-73);

(6) Some Newborn accessory products lacked country-of-origin markings, including offset spatulas at the time the instant action was filed, (id. at ¶¶ 1380-81; see also ECF 385 at 4877:10-18); and

(7) Albion was harmed by Newborn's conduct based on testimony of lost sales, (ECF 396 at ¶¶ 1388-89).

In response to Albion's proposed findings of fact, Newborn admits that it does not operate a manufacturing facility in the United States, but rather relies on exclusive relationships with Taiwanese and Chinese manufacturers.  (ECF 401 at 3-4).  It also counters, in relevant part, that use of its "Newborn U.S.A." logo on sell sheets predated Albion's relevant conduct and that the use of the logo on letterhead did not relate to any

5

competition with Albion. (Id. at 4-5, 7). Newborn adds that the former controller's testimony constituted "Monday morning quarterback[ing]" that fails to establish that a consumer was actually misled by the trademark, (id. at 9), and that the 2007 renewal was a mistake that fails to evidence actual use or "an act equivalent to Albion's intentional blanket false origin claims over a decade," (id. at 10-11).

Unmarked offset spatulas were sold in containers with country-of-origin markings and corrective action was later taken to individually mark the products. (Id. at 14). Finally, Newborn explains that its "largest caulking gun manufacturer/distributor in the United States" statement was made in good faith and believed to be accurate based on the company's then-vice president's understanding of the term "manufacturer" and competitor's sales. (Id. at 8).

## II. Legal Standard

### a. Jurisdiction

The Court has jurisdiction of this matter pursuant to the Lanham Act, 15 U.S.C. § 1125, and 28 U.S.C. § 1367, which gives the Court jurisdiction over Newborn's state-law claim.

### b. Rule 52(c)

A court conducting a nonjury trial may enter judgment on a claim or defense after a party has been fully heard on the issue. Fed. R. Civ. P. 52(c). "In considering whether to grant

judgment under Rule 52(c), the district court applies the same standard of proof and weighs the evidence as it would at the conclusion of the trial." EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 272 (3d Cir. 2010).  In so doing, courts do not "view the evidence through a particular lens or draw inferences favorable to either party." Id.[2]

### c. Unclean Hands Doctrine

Unclean hands is an equitable doctrine applicable to Lanham Act actions[3] that "applies when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 174 (3d Cir. 2001).  Though courts in this District have added injury to the

---

[2] A court must further make findings of fact and conclusions of law pursuant to Rule 52(a) when it enters judgment pursuant to Rule 52(c). EBC, Inc., 618 F.3d at 273.  This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a). See Ciolino v. Ameriquest Transp. Servs., Inc., 751 F. Supp. 2d 776, 778 (D.N.J. Nov. 22, 2010) (citing Pierre v. Hess Oil V.I. Corp., 624 F.2d 445, 450 (3d Cir. 1980)).

[3] The Court has previously noted that the parties' briefing does not make any distinctions between the Lanham Act and New Jersey common law.  (ECF 363 at 58 n.11).  The Court further recognizes that "the elements of unfair competition under . . . New Jersey common law are the same as those required under the Lanham Act." G&W Lab'ys, Inc. v. Laser Pharms., LLC, No. 3:17-cv-3974, 2018 WL 3031943, at *7 (D.N.J. June 19, 2018).  The Court will therefore conduct its analysis of unclean hands as to the Lanham Act and New Jersey common law violations as one.

7

defendant as part of the doctrine's analysis, see Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P., 292 F. Supp. 2d 594, 610 (D.N.J. Nov. 24, 2003), "[u]nder [Third Circuit] jurisprudence, proof of injury is not required," Scherer Design Grp., LLC v. Ahead Eng'g LLC, 764 F. App'x 147, 150 n.5 (3d Cir. 2019).  Rather, "[unclean hands] has nothing to do with the rights or liabilities of the parties" and more so derives from courts' unwillingness to grant relief to parties whose conduct "shock[s] the moral sensibilities of the judge." Gaudiosi v. Mellon, 269 F.2d 873, 882 (3d Cir. 1959) (quoting Art Metal Works v. Abraham & Straus, 70 F.2d 641, 646 (2d Cir. 1934) (Hand, J., dissenting)).

The first element of an unclean hands defense requires a showing of fraud, unconscionability, or bad faith.  See Scherer Design Grp., LLC, 764 F. App'x at 150 n.6 (citing S&R Corp. v. Jiffy Lube Int'l, Inc., 967 F.2d 371, 377 n.7 (3d Cir. 1992)). More than mere negligence is required, see Saudi Basic Indus. Corp. v. ExxonMobil Corp., 401 F. Supp. 2d 383, 393 (D.N.J. Nov. 14, 2005) (interpreting S&R Corp., 967 F.2d at 377 n.7), though "actions taken recklessly or in blatant disregard can amount to unclean hands," id. at 396.  The plaintiff's conduct further need not itself rise to a level warranting legal action – "[a]ny willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is

sufficient." Id. at 393 (quoting Monsanto Co. v. Rohm & Haas Co., 456 F.2d 592, 598 (3d Cir. 1972)).

Further, with respect to the second element – relatedness, the connection between the plaintiff's conduct and the underlying claim must be close. In re New Valley Corp., 181 F.3d 517, 525 (3d Cir. 1999). The plaintiff's conduct must impact the equity between the parties as to a matter being adjudicated. Highmark, Inc., 276 F.3d at 174 (citing Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 245 (1933)).

"Because a central concern in an unfair competition case is protection of the public from confusion, courts require clear, convincing evidence of 'egregious' misconduct before invoking the doctrine of unclean hands." Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City, 383 F.3d 110, 129 (3d Cir. 2004) (quoting Ciba-Geigy Corp. v. Bolar Pharm. Co., Inc., 747 F.2d 844, 855 (3d Cir. 1984)).[4] District courts may exercise

---

[4] The Court notes that the parties' briefing was divided on the applicable standard of proof. Albion, though claiming to satisfy the clear and convincing standard, has advanced preponderance of evidence as the appropriate standard. (ECF 394 at 13 (citing Kelley Blue Book v. Car-Smarts, Inc., 802 F. Supp. 278, 292 (C.D. Cal. Aug. 27, 1992) and MDO Dev. Corp. v. Kelly, 735 F. Supp. 591, 592 (S.D.N.Y. May 1, 1990)). Newborn, meanwhile, has asserted that "[a] defendant raising unclean hands as a defense must introduce clear and convincing evidence of egregious misconduct." (ECF 388 at 5 (citing Merisant Co. v. McNeil Nutritionals, LLC, 515 F. Supp. 2d 509, 531 (E.D. Pa. Mar. 2, 2007)). The Court is persuaded by both the plain language provided by the Third Circuit, see Citizens Fin. Grp., Inc., 383 F.3d at 129, and its citation within the District, see

9

their discretion in recognizing unclean hands defenses, including limiting its reach to certain claims.  See In re New Valley Corp., 181 F.3d at 525.

**III. Analysis**

Based on the evidence presented, the Court holds that Albion has sufficiently supported its unclean hands defense through clear and convincing evidence of unconscionable or bad faith conduct that shares a nexus with the instant underlying action, namely representations indicating that foreign-manufactured products were made in the United States.

First, the Court finds persuasive Newborn's use and trademark of its U.S.A. logo, which places the company name within an outline of a map of the United States and lists United-States-based office and warehouse locations without mention of products' exclusively overseas manufacture.  This includes, in particular, a declaration made in Newborn's February 2007 renewal application that the mark was still used in interstate commerce at that time.  (ECF 385 at 4834:22 to 4837:2).  Newborn asserts that this renewal fails to evidence actual use, (ECF 401 at 11), and while this argument may have

---

Katiroll Co., Inc. v. Kati Roll and Platters, Inc., No. 10-3620, 2011 WL 2294260, at *2 (D.N.J. June 8, 2011), that clear and convincing is the appropriate standard.

weight in another context,[5] the issue here is whether Newborn engaged in the same conduct for which it faults Albion.  Clearly it did.

First, merely characterizing the 2007 application as a mistake begs the question of why Newborn would bother to undertake the effort and expense of renewal of a U.S.-themed mark except to perpetuate a false image as an American manufacturing company, precisely Albion's conduct that the Court found so disturbing as it clung for years to the same false narrative in the marketplace.  Equally significant is the nature of the statement, made to a government agency under penalty of perjury reminiscent if not identical, while not in number but at least in kind, to Albion's false certificates of origin used to pass off its foreign-made goods as American-made.  (ECF 363 at 29-31, 73).  At its heart, Newborn's admittedly false 2007

---

[5] In the somewhat analogous context of priority of use of trademarks, "[t]he allegation of a date of first use in a use-based application for registration is not evidence of a date of first use on behalf of an applicant or registrant."  J. Thomas McCarthy, 3 McCarthy on Trademarks and Unfair Competition § 20:17 (5th ed. 2022) (citing 37 C.F.R. § 2.122(b)(2)); see also MPC Franchise, LLC v. Tarntino, 19 F. Supp. 3d 456, 483 (W.D.N.Y. May 14, 2014) (citing the fourth edition).  The application may nonetheless be instructive when considered with other evidence.  See Tzu Wei Chen Food Co. v. Chia-Chi Enters., No. 94-1527, 1995 WL 714589, at *2 (Fed. Cir. 1995) ("[T]he rejected trademark application could be instructive, but only if consistent with other reliable evidence pointing in the same direction.").

11

renewal, as a matter of equity, cabins its claims against Albion.

Additional conduct that the Court finds relevant includes Newborn's 2003 catalog statement describing itself as "the largest caulking gun manufacturer/distributor in the United States," a statement the Court finds to be obviously false as Newborn did not at the time, and does not now, manufacture any products in the United States and has rather relied on relationships with manufacturers in China and Taiwan. Newborn concedes to as much in its response. (ECF 401 at 3-4). Testimony has also been elicited that some Newborn products did not bear origin markings, including offset spatulas that were not marked at the time this action was filed in 2012. (ECF 385 at 4877:10-18).

The Court holds that these actions by Newborn at the very least constitute a blatant disregard for their potential to mislead consumers into believing that products were manufactured in the United States. See Saudi Basic Indus. Corp., 401 F. Supp. 2d at 396. This conduct, in the Court's view, both overlaps in time with Albion's violations and impacts the "equitable relations between the parties," see Highmark, Inc., 276 F.3d at 174 (quoting Keystone Driller Co., 290 U.S. at 245), in this matter as this action has centered on representations of domestic manufacture of foreign-made products, creating a

12

sufficiently close nexus between the actions of Albion and Newborn. Newborn's comparisons between its conduct and Albion's violative actions are unavailing. The unclean hands doctrine is an instrument of courts, see Gaudiosi, 269 F.2d at 882, and the offending conduct need not itself be worthy of a lawsuit similar to the one brought by Newborn against Albion, see Monsanto Co., 456 F.2d at 598.

Exercising the Court's discretion in applying and tailoring the doctrine, see In re New Valley Corp., 181 F.3d at 525, the Court identifies February 7, 2007, the date of the declaration signed as part of Newborn's trademark renewal application, as an appropriate dividing line before which relief will not be granted. Any relief Newborn may be awarded based on the Court's prior rulings must be limited, based on evidence to be produced, to actions made by Albion after February 7, 2007.[6]

**IV. Conclusion**

For the reasons stated above, Defendant Albion's motion for judgment as a matter of law pursuant to Federal Rule of Civil

---

[6] The Court will further limit any disgorgement to competing caulk guns only, not - to the extent Newborn seeks such relief - caulk gun related products and accessories. Newborn's failure to mark spatulas through the date of the filing of this action, while insufficient to completely bar disgorgement related to the core product of caulk guns, is sufficient as a matter of equity to preclude completely any recovery for accessories and related products.

13

Procedure 52(c) will be granted in part.

An Order consistent with this Opinion will be entered.


Date: May 24, 2023                  s/ Noel L. Hillman
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.