```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

```
    NEWBORN BROS. CO., INC.,

              Plaintiff,         1:12-cv-02999-NLH-AMD

         v.                      OPINION

    ALBION ENGINEERING COMPANY,

              Defendant.
```

**APPEARANCES**:

JOHN-PAUL MADDEN
TIMOTHY R. BIEG
MADDEN & MADDEN
108 KINGS HIGHWAY EAST, SUITE 200
P.O. BOX 210
HADDONFIELD, N.J. 08033

 *Attorneys Plaintiff Newborn Bros. Co., Inc.*

JEFFREY M. SCOTT
ARCHER & GREINER, PC
ONE CENTENNIAL SQUARE
P.O. BOX 3000
HADDONFIELD, N.J. 08033

KERRI E. CHEWNING
ARCHER & GREINER
1025 LAUREL OAK ROAD
VOORHEES, N.J. 08043

 *Attorneys for Defendant Albion Engineering Company.*

**HILLMAN**, **District Judge**

 Pending before the Court is Plaintiff Newborn Bros. Co., Inc.'s ("Newborn") motion in limine to exclude Defendant Albion

Engineering Company's ("Albion") expert Samuel J. Kursh, D.B.A., replacement expert Brett A. Margolin, Ph.D., and related documents. (ECF 546). For the reasons expressed below, the motion will be denied.[1]

**I. Background**

The Court presumes the parties' familiarity with the facts of this case and the relevant reports and portions of the record.

On February 22, 2016, Kursh issued an expert report responding to Newborn's expert as to potential profit disgorgement and itself calculating purportedly appropriate disgorgement, if necessary. (ECF 246-4). Newborn moved to preclude Kursh's testimony and introduction or use of materials not produced during discovery, asserting that Kursh relied on data and information not provided to Newborn and that Kursh's proposed testimony was not reliable or relevant as required by Federal Rule of Evidence 702. (ECF 210; ECF 211). In a June 6, 2017 order, the Court deferred its decision on the motion, if necessary, to the remedy stage of trial. (ECF 258 at 2).

---

[1] After orally advising the parties of its decision during the December 11, 2023 motion hearing, the Court heard testimony from Margolin on December 14, 2023, prior to the issuance of this opinion. The Court's perception of that testimony only served to confirm the conclusions of this opinion that Margolin's testimony satisfied the Daubert admissibility standard.

2

The Court has since issued an opinion and order on liability that concluded "that equity weighs in favor of disgorging Albion's profits," (ECF 363 at 107-08; ECF 364), and an opinion and order granting in part Albion's Federal Rule of Civil Procedure 52(c) motion pertaining to its unclean-hands defense, (ECF 410; ECF 411).  The parties convened for a status hearing on August 21, 2023, during which Albion's counsel informed the Court that Kursh has retired and is no longer available to testify for health reasons.  (Aug. 21, 2023 Hearing Tr. 3:25-4:6).  The Court permitted "Margolin to act as a substitute expert and issue a supplemental report that reflect[ed its] decision on unclean hands and any other relevant rulings."  (Id. at 7:21-23).[2]

Margolin issued his report on October 27, 2023.  (ECF 426-1 at 4-51).  Newborn filed its pending motion in limine on November 24, 2023, (ECF 426), to which Albion filed an opposition, (ECF 431).

---

[2] The Court further stated its intention to deny a motion to exclude Kursh as moot due to his unavailability.  (Aug. 21, 2023 Hearing Tr. 7:19-20).  The Court therefore denies Newborn's since-filed motion as moot to the extent that it seeks to preclude the opinion or testimony of Kursh.  As set forth below, to the extent that the parties dispute whether full disclosure of the data underlying each of the competing expert opinions was available to the other, the Court is satisfied that the proffered experts in the disgorgement phase have had equal access to relevant data both for purposes of their affirmative opinions and effective cross-examination.

## II. Discussion

### A. Jurisdiction

The Court exercises original jurisdiction over this matter pursuant to the Lanham Act, see 15 U.S.C. § 1121(a), and 28 U.S.C. 1331.  It exercises supplemental jurisdiction over Newborn's common-law claim.  See 28 U.S.C. § 1367(a).

### B. Expert Testimony

Pursuant to the Federal Rules of Evidence, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify" if it is shown that it is more likely than not that their "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; their testimony is based on sufficient facts or data and reliable principles and methods; and their opinion represents a reliable application of those principles and methods to the facts of the case.  Fed. R. Evid. 702.  Rule 702 refers to a trier of fact as opposed to a jury and therefore "applies whether the trier of fact is a judge or a jury."  UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres, 949 F.3d 825, 832-33 (3d Cir. 2020).  An expert's opinion may be based on facts or data that the expert personally observed or was made aware of, and such facts and data need not be admissible in order to be relied upon.  Fed. R. Evid. 703.

The Third Circuit Court of Appeals has imposed a "trilogy

4

of restrictions on expert testimony: qualification, reliability and fit." Langbord v. U.S. Dep't of Treasury, 832 F.3d 170, 194 (3d Cir. 2016) (quoting Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003)). Qualification requires that the witness possess specialized knowledge, skills, training, or expertise. Krys v. Aaron, 112 F. Supp. 3d 181, 189 (D.N.J. June 12, 2015) (citing Schneider, 320 F.3d at 404). Reliability demands "that the testimony be based upon 'the "methods and procedures of science" rather than on "subjective belief or unsupported speculation"' and that the expert have '"good grounds" for his or her belief.'" Id. (quoting Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d 316, 321 (3d Cir. 2003)). Finally, fit is a "'helpfulness' standard" that refers to the testimony's relevance and ability to assist the factfinder. Id. at 190 (quotations omitted) (quoting Schneider, 320 F.3d at 404).

The proponent of the expert testimony bears the burden of establishing each requirement by a preponderance of the evidence. Ford v. Ford Motor Co., 311 F. Supp. 3d 667, 673 (D.N.J. Oct. 27, 2017). District courts exercise considerable discretion in admitting or excluding expert opinion and testimony. See Pineda v. Ford Motor Co., 520 F.3d 237, 243 (3d Cir. 2008) (noting that district courts' decisions to admit or exclude expert testimony are reviewed for abuse of discretion).

5

Finally, when – as here – a party seeks to present a substitute expert, courts within the Third Circuit have generally sought to prevent prejudice to the opposing party by "ensuring that the testimony is 'substantively similar to the original expert's opinions and limited to the same matters.'" See, e.g., Sikkelee v. Precision Airmotive Corp., No. 4:07-CV-00886, 2021 WL 392101, at *5 (M.D. Pa. Feb. 4, 2021) (quoting Lefta Assocs., Inc. v. Hurley, No. 1:09-CV-2487, 2013 WL 12239510, at *2 (M.D. Pa. Feb. 13, 2013)). That is because the purpose of permitting substitution is to place the proponent in the same position that they would have been but for the need to substitute their original expert, not place them at an advantage with the benefit of a new or more beneficial opinion. Id. (citing Shipp v. Arnold, No. 4:18-CV-4017, 2019 WL 4040597, at *2 (W.D. Ark. Aug. 27, 2019)).

**III. Analysis**

Newborn's motion raises three primary arguments: the data on which Kursh and Margolin relied was not provided in discovery, Margolin's report steps beyond merely supplementing Kursh's original report, and Margolin's opinions otherwise fail to meet the standard of Federal Rule of Evidence 702. The Court addresses these arguments in turn.

   a. **The Underlying Data**

Newborn submits that Kursh and Margolin both rely on two

6

summary spreadsheets – DTX-173 and KURSH 1A.  (ECF 426-2 at 36).  With respect to KURSH 1A, it is unclear who created the summary and the underlying data was not produced in discovery, according to Newborn.  (Id. at 36-37).  Albion counters that DTX-173 was produced in discovery and KURSH 1A was produced on August 9, 2017 and – like DTX-173 – contains 2000-2015 sales data kept in the ordinary course of business, the type on which professionals like Margolin regularly rely.  (ECF 431 at 5-7).  Albion adds that, though KURSH 1A was excluded as substantive evidence, it was not precluded for use in expert testimony and Newborn is not prejudiced by use of the data sets as it has had both in its possession for six years and may probe any reliability issues via cross-examination.  (Id. at 6 n.2, 7 n.3).

   The Court agrees with Albion.  It is reminded that "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703; see also Viking Yacht Co. v. Composites One LLC, 613 F. Supp. 2d 637, 645 n.11 (D.N.J. May 14, 2009) (rejecting an argument that scholarly articles and testimony relied upon by the expert were inadmissible hearsay and thus an impermissible basis for the opinion, finding that such evidence was reasonably relied upon among those in the expert's field and thus appropriate for the expert to have used).

7

Faced with a somewhat analogous situation in which the plaintiff sought to exclude documents not disclosed in discovery or disclosed after the discovery deadline, a court in the Central District of California declined to preclude experts from relying on unproduced documents provided that they were disclosed in the experts' reports because "nothing in Rule 703 of the Federal Rules of Evidence bars reliance on appropriate documents as the basis for an opinion." Gray v. Mazda Motor of Am., Inc., No. SACV 08-279, 2009 WL 10673335, at *1-2 (C.D. Cal. Feb. 6, 2009).  Here, Margolin's report specifically identifies the documents relied upon, including DTX-173 and KURSH 1A.  (ECF 426-1 at 36).  Furthermore, the Court's conclusion here is consistent with its statement during the 2017 trial in which it excluded KURSH 1A as substantive evidence but expressly reserved its potential use in forming the basis of expert opinion. (Trial Tr. 4014:15-25).  The Court will therefore deny Newborn's motion on this basis.

**b. Margolin's Report as Compared to Kursh's**

Next, Newborn argues that Margolin's report exceeds the Court's invitation to supplement and update Kursh's original report.  (ECF 426-2 at 22).  Rather than update Kursh's opinions to account for the Court's subsequent rulings, Margolin eschewed the opinions, methods, and assumptions of Kursh's report on the way to developing an entirely new one, according to Newborn.

8

(Id. at 22-24).  Albion counters that each party was provided an opportunity to revise their expert reports and there is no basis for exclusion due to Margolin's failure to adopt Kursh's conclusions.  (ECF 431 at 19).  Circumstances have changed since Kursh's report, according to Albion, particularly with the Court's opinions on liability and Albion's unclean-hands defense.  (Id. at 9-10).

The Court acknowledges that while it permitted Margolin "to act as a substitute expert and issue a supplemental report that reflect[ed its] decision on unclean hands and any other relevant rulings," (Aug. 21, 2023 Hearing Tr. 7:21-23), it did so "assuming [Albion's] view of the case [wa]s likely to be similar, just updated," (id. at 7:14-15).  Kursh's report contained an overview section including background information on the parties, their sales, and the caulking-gun market absent from Margolin's report; limited its calculation to new customers as "the only group that could have been affected by the alleged false advertising and product marking"; and attributed to Albion an existing brand recognition of quality and value, (ECF 246-4 at 5-11, 17-18).  Margolin, meanwhile, concluded that consumers who valued country of origin were only willing to pay a premium of fifteen percent – eliminating Albion guns beyond that cap from economic competition – and that repeat B-Line customers were aware of the guns' Taiwanese manufacture and thus made

9

subsequent purchases for reasons unrelated to country of origin. (ECF 426-1 at 16-19).

Admittedly, Margolin's opinions depart from Kursh's more significantly than the Court anticipated during its August 21, 2023 hearing, but that does not render his opinions wholly surprising. Nearly eight years have passed since Kursh's original report and the Court has issued opinions on both liability and unclean hands in the interim. It would have been unhelpful to the Court for Margolin to not have considered these decisions and the record from which they arose. It is not that Albion has shifted its proffered expert opinions to ambush Newborn. It has simply reacted – understandably - in response to the Court's sequential opinions.

The Court further finds that it would be unfair to Albion to prevent its expert from opining on decisions, testimony, and other evidence that may be beneficial to its position. Substitution of an expert ought not result in a windfall for the proponent, but it also should not unfairly disadvantage it. See Lefta Assocs., Inc., 2013 WL 12239510, at *4 (excluding a paragraph from the defendants' substitute expert's report but permitting a response to the plaintiffs' potential related testimony). A substitute expert opinion is generally admissible when it does not prejudice the opposing party, a standard that considers the time available to depose the substitute expert and

10

prepare for cross-examination.  Id. at *2 (citing Ferrara & DiMerucio v. St. Paul Mercury Insurance Co., 240 F.3d 1 (1st Cir. 2001) in which substitution three months prior to trial was not deemed prejudicial).

Though Margolin issued his opinion just a month-and-a-half ago, Newborn has already deposed him as provided by the Court and has had adequate opportunity to prepare for cross-examination as evidenced by its thoughtful briefing in support of its motion, the contents of which – as will be restated below – the Court finds to be most appropriate for cross-examination. The Court will therefore deny Newborn's motion on this basis.

### c. Margolin's Report Under the Rule 702 Standard

Finally, and most substantially, Newborn argues that Margolin does not have the requisite expertise to render industry-specific opinions, has not calculated profit disgorgements for Lanham Act violations, lacks familiarity with the caulking-gun industry and related competition, and opines on a fifteen-percent premium cap above which purchasers are attributed as possessing a "revealed preference" for Albion that did not account for factors such as distributors' complete refusal to buy from Newborn based on American-made preferences. (ECF 426-2 at 24-28).  Margolin's report suffers from additional defects including unreliable methods and assumptions, failure to "fit" the facts as presented during the liability stage, and

11

findings that purportedly seek to unravel the Court's holdings at the liability stage. (Id. at 28-35).

Albion responds that Margolin's methods fit this case because purchasers consider multiple factors – including country of origin, price, and quality – and Margolin's opinion includes the parties' understanding of competition and competition-related testimony elicited at trial. (ECF 431 at 11). Margolin's fifteen-percent cap is supported by trial testimony – cited in the Court's liability opinion – on the premium at which witnesses believed American manufacture was valued while trial testimony further supports Margolin's conclusion that repeat purchasers of B-Line guns would understand that they were imported. (Id. at 12-14, 16-18). Newborn's argument against Margolin's use of weighted averages in comparing sales goes to weight as opposed to admissibility, according to Albion. (Id. at 15-16).

The Court premises its decision on the principle that "Rule 702 prescribes 'a liberal policy of admissibility'" and is therefore a rule of inclusion rather than exclusion. See Krys, 112 F. Supp. 3d at 190 (quotations omitted) (quoting Pineda, 520 F.3d at 243). The Third Circuit has applied a liberal interpretation to Rule 702's qualification requirement. See Pineda, 520 F.3d at 244. In that same vein, the standard for reliability is "not that high" and "lower than the merits

12

standard of correctness," Karlo v. Pittsburgh Glass Works, LLC, 849 F.3d 61, 81 (3d Cir. 2017) (quoting In re TMI Litig., 193 F.3d 613, 665 (3d Cir. 1999)), while a similar standard applies for fit, see McGarrigle v. Mercury Marine, 838 F. Supp. 2d 282, 293 (D.N.J. Dec. 20, 2011) (noting that the standard for fit is "not that high" but "higher than bare relevance" (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 745 (3d Cir. 1994))).

A court abuses its discretion when it excludes an expert simply because the expert is not deemed to be the best qualified or specialized in the area considered most appropriate, see Pineda, 520 F.3d at 244, and "admissibility is not based on whether an expert's 'opinion has the best foundation, or even whether the opinion is supported by the best methodology or unassailable research,'" UGI Sunbury LLC, 949 F.3d at 834 (quoting Karlo, 849 F.3d at 81).

Here, Margolin holds a Ph.D. in economics and focuses his practice on providing economic analyses for litigation, including disgorgement calculations. (ECF 426-1 at 6-7). In conducting a two-step analysis by which he sought to identify sales subject to disgorgement and then estimate the profits to be disgorged therefrom, (id. at 10-11), Margolin arrived at a number of conclusions including that consumers who placed determinative weight on country of origin were willing to pay a premium of no more than fifteen percent for American-

13

manufactured products – excluding products above the fifteen-percent cap from the disgorgement calculation – and repeat purchasers of B-Line guns were aware of their Taiwanese manufacture by way of sticker, stamp, or hangtag and thus their subsequent purchases were unrelated to any actionable misrepresentation made by Albion, (id. at 16-19).  The Court cannot say at this juncture that these conclusions are unreliable or unsupported.  For instance, Margolin's fifteen-percent cap is directly derived from trial testimony – recognized though not adopted as fact in the Court's liability opinion – of Lance Florian, part owner of Tiger Enterprises, that "some customers are willing to pay up to fifteen percent more for a product labeled as 'Made in USA.'"  (ECF 363 at 39).[3]

Further, the court in Diamond Resorts U.S. Collection Development, LLC v. Newton Group Transfers, LLC, was recently faced with challenges – similar to those presented here – to the plaintiffs' economist retained to provide expert testimony as to the damages incurred due to violations of the Lanham Act and

---

[3] If Margolin errs at all it is the apparent assumption that the Court's reference to a fifteen-percent premium constituted a finding that the record supported a conclusive and final decision that "Made in America" translated neatly into a certain defined premium.  That is not the case, as there is also evidence in the record that supports a higher, even much higher, premium.  What the Court intended to convey, and reiterates here, is that certain end consumers are willing to pay a meaningful premium for products made in the United States.

14

other causes of action.  See No. 9:18-CV-80311, 2022 WL 1642865, at *21 (S.D. Fla. Mar. 31, 2022).  The defendants sought to exclude the expert based on his reliance on information apparently authored by the plaintiffs' counsel and failure to independently verify the data received by the plaintiffs.  Id. The court rejected these challenges, finding that Rule 703 permitted reliance on the work of others so long as the data was the type reasonably relied upon in the expert's field, and concluded that the defendants' challenges were more applicable to the weight placed on the expert testimony than its admissibility.  Id. at *23-24.  The Court holds that a similar conclusion is warranted in response to Newborn's challenges here.

The disgorgement stage of trial tasks the Court with comparing the parties' competing products, considering the roles of other participants in the caulking-gun market, and weighing a product's country of origin against a list of other factors that influence purchase decisions all without clear, direct apples-to-apples evidence.  Absent such evidence, the Court holds that the general framework offered by Margolin, who possesses expertise in a recognized field, may be helpful to the Court in understanding the competition between participants in the caulking-gun market and crafting an appropriate remedy.

The Court may ultimately reject Margolin's opinions or

15

place greater weight in factual evidence or competing expert testimony presented.  To that end, Newborn has had the opportunity to voir dire Margolin on his expertise and qualifications and cross-examine him on his methodology and related conclusions.  It is through these safeguards – not wholesale exclusion – that the Court believes Newborn's concerns are best addressed.

## IV. Conclusion

For the reasons stated above, Newborn's motion in limine, (ECF 546), will be denied.

An order consistent with this opinion will be entered.


Date: December 18, 2023                s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.