# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NEWBORN BROS. CO., INC.,**<br><br>    Plaintiff,<br><br>    v.<br><br>**ALBION ENGINEERING COMPANY**<br><br>    Defendant. | Case No. 12–02999–ESK–AMD<br><br>OPINION |

**KIEL, U.S.D.J.**

   **THIS MATTER** is before the Court on plaintiff Newborn Bros. Co., Inc.'s motion for reconsideration (ECF No. 459) and defendant Albion Engineering Company's motions to correct (ECF No. 466) and seal (ECF No. 488).[1]   The

---

   [1] Pursuant to Federal Rule of Appellate Procedure 4(a)(4), a district court may retain jurisdiction to rule on specific timely post-judgment motions notwithstanding the filing of a notice of appeal.  *Botello v. Navient Sols., LLC*, Case No. 22–05601, 2023 WL 4014289, at *1 n.1 (D.N.J. June 15, 2023).  Among them are motions "for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58," "to alter or amend the judgment under Rule 59," and "for relief under Rule 60 if the motion is filed within the time allowed for filing a motion under Rule 59."  Fed. R. App. P. 4(a)(4)(A)(iii), (iv), (vi).  For the purpose of determining my jurisdiction, I interpret plaintiff's motion for reconsideration as a motion filed under Rule 59(e) or 60(b).  *See Rich v. State*, 294 F. Supp. 3d 266, 277 (D.N.J. 2018) ("Generally, a motion for reconsideration is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e), or as a motion for relief from judgment or order under Rule 60(b).")  Both motions were timely filed and though defendant's motion was filed after its notice of appeal, I conclude that I nonetheless may rule on it.  *See Meade v. Reynolds*, 810 F. App'x 86, 87 n. 4 (3d Cir. 2020) ("It makes no difference whether the Rule 4(a)(4)(A) motion is filed before or after the notice of appeal; all that matters is that the motion is timely.").  Plaintiff also filed a motion for attorney's fees that was not preceded by an extension of time pursuant to Rule 58.  (ECF No. 480.)  I administratively terminated the motion and directed the parties to brief whether the Court has jurisdiction to consider the fees motion.  (ECF No. 483.)  After consideration of the parties' responses (ECF Nos. 484, 485), I remain unconvinced that the motion for attorney's fees is wholly unrelated to the order for injunctive relief

parties have filed corresponding oppositions (ECF No. 467 (Pl.'s Opp. Br.), ECF No. 468 (Def.'s Opp. Br.), ECF No. 489) and replies (ECF No. 472 (Pl.'s Reply Br.), ECF No. 473 (Def.'s Reply Br.), ECF 490).  For the following reasons, plaintiff's motion for reconsideration and defendant's motion to correct will both be DENIED.  Defendant's motion to seal will be administratively terminated pending appeal.

## I. FACTS AND PROCEDURAL HISTORY

This is a Lanham Act and unfair competition action in which plaintiff alleged that defendant made false statements, misrepresentations, and material omissions regarding the geographic origin of its products.  (ECF No. 1.)  District Judge Noel L. Hillman (Ret.) held a bench trial on liability from June 2017 to September 2017 and ruled that plaintiff was entitled to injunctive and monetary relief.  (ECF Nos. 363, 364.)  Judge Hillman later set an unclean-hands bar date of February 7, 2007, limiting any relief to which plaintiff may have been entitled to events that occurred after that date.  (ECF No. 410 p. 13.)

Judge Hillman held three days of evidentiary hearings on the issue of permanent injunctive relief in November and December 2023 and a four-day bench trial on the issue of disgorgement in December 2023.  (ECF Nos. 429, 430, 433, 438, 440, 441, 447.)  In a February 29, 2024 opinion and order, Judge Hillman awarded plaintiff disgorgement of defendant's profits, prejudgment interest, and injunctive relief.  (ECF No. 457 (Feb. 29, 2024 Op.), ECF No. 458.) Relevant to the pending motion for reconsideration and motion to correct, Judge Hillman adopted some—but not all—of defendant's reasoning in calculating a

---

currently under appeal. The motion for fees shall remain administratively terminated.  Similarly, defendant's motion to seal relates to its distributor list and compliance with the Court's injunction order.  (ECF No. 488.)  As that order is under appeal, I find that any order sealing or unsealing the list would be inappropriate.  The motion will therefore be administratively terminated pending appeal and the list shall remain sealed in the interim.

disgorgement sum. (Feb. 29, 2024 Op. pp. 20–32.) Judge Hillman ultimately concluded that $1,614,427 was an appropriate disgorgement sum with applicable prejudgment interest totaling $533,577 for a combined $2,148,004 award. (*Id.* pp. 27–31.) Judge Hillman deferred entry of judgment pending plaintiff's application for attorney's fees. (*Id.* pp. 31, 32.)

Defendant filed an appeal on March 25, 2024. (ECF No. 463.) That same day, this case was reassigned to me. (ECF No. 464.) In a May 28, 2024, opinion and order, I denied defendant's motion to stay injunctive relief pending its appeal. (ECF Nos. 478, 479.)

## II. MOTIONS FOR RECONSIDERATION AND TO CORRECT

Motions for reconsideration are not expressly authorized by the Federal Rules of Civil Procedure and, are instead, governed within this District by Local Civil Rule 7.1(i). *Rich*, 294 F. Supp. 3d at 272. Relief under Local Civil Rule 7.1(i) "is an extraordinary remedy that is granted 'very sparingly.'" *Id.* (quoting L. Civ. R. 7.1(i) cmt. 6(d)). To prevail, the movant must present "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.* (alteration in original) (quoting *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). Importantly, a court "will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter." *Andreyko v. Sunrise Senior Living, Inc.*, 993 F. Supp. 2d 475, 478 (D.N.J. 2014).

Pursuant to Federal Rule of Civil Procedure 60(a), a court may on its own or by motion "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). Rule 60(a) is intended only for "mindless and mechanistic mistakes, minor shifting of facts, and no new additional legal

3

perambulations." *Gutierrez v. Johnson & Johnson*, 743 F. Supp. 2d 418, 422 (D.N.J. 2010) (quoting *Pfizer Inc. v. Uprichard*, 422 F.3d 124, 130 (3d Cir. 2005)). Clerical errors and mistakes in copying or computation, not matters that affect parties' substantive rights or require legal research or deep-dives into facts, may be addressed under Rule 60(a). *Id.*; *see also Taylor v. Vineland Dev. Sch.*, 532 F. App'x 93, 94 n. 2 (3d Cir. 2013) (finding that the district court was without authority to enter the orders because they impacted the parties' rights and were therefore outside the scope of Rule 60(a)).

Finally, a court may relieve a party from a final judgment, order, or proceeding for, among other reasons, "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Mistakes under Rule 60(b)(1) include legal errors made by judges. *Shukla v. Univ. of Pa. Health Sys.*, Case Nos. 22–2029 & 22–2257, 2022 WL 4461395, at *2 (3d Cir. Sept. 26, 2022).

Legal error alone, however, is insufficient to grant a Rule 60(b) motion and such motions may not be used as a substitute to an appeal. *Rich*, 294 F. Supp. 3d at 273; *see also Holiday Vill. E. Home Owners Ass'n, Inc. v. QBE Ins. Corp.*, 830 F. Supp. 2d 28, 29 n. 1 (D.N.J. 2012) (noting that the plaintiff alleged that the court committed legal errors and thus a motion pursuant to Rule 59(e), not Rule 60(b)(1), was the appropriate vehicle for relief). Rather, "a movant must establish that the circumstances warrant overcoming the 'overriding interest in the finality and repose of judgments'" for the "extraordinary" remedy provided by Rule 60(b). *VisionSoft Consulting, Inc. v. Cognitus Consulting, LLC*, Case No. 19–11526, 2020 WL 5542790, at *7 (D.N.J. Sept. 16, 2020) (quoting *In re Vehicle Carrier Servs. Antitrust Litig.*, Case No. 13–03306, 2016 WL 1628879, at *4 (D.N.J. Apr. 25, 2016)). Disagreement with a court's ruling does not constitute an extraordinary circumstance. *Id.*; *see also Kaetz v. United States*, Case No. 23–02772, 2023 WL 5049598, at *1 (D.N.J. Aug. 8, 2023) (concluding that the plaintiff's allegation that the court erred in screening his complaint

was insufficient for relief pursuant to Rule 60(b)); 21A Fed. Proc., L. Ed. §51:136 (2024) ("[W]hen the motion is nothing more than a request that the district court change its mind, it is not authorized under Rule 60(b)."); 47 Am. Jur. 2d Judgments §659 (2024) ("To succeed on a motion to set aside a judgment on the basis of mistake, surprise, or excusable neglect, the claimant generally must not only show mistake, surprise, or excusable neglect, but must also make a prima facie showing that a different result would be reached if the case were tried on the merits.").

### III. DISCUSSION

The parties' competing motions relate to the disgorgement sum awarded in the Court's February 29, 2024 opinion. Disgorgement under the Lanham Act is a form of equitable relief, *Koninkijke Philips Elecs. N.V. v. Hunt Control Sys., Inc.*, Case No. 11–03684, 2016 WL 3545529, at *26 (D.N.J. June 29, 2016), for which courts exercise considerable discretion, *see World Ent. Inc. v. Brown*, 487 F. App'x 758, 762 (3d Cir. 2012) (reviewing a disgorgement of profits for abuse of discretion). Relief pursuant to Rule 60 and Local Civil Rule 7.1(i) is also discretionary. *See Sovereign Bank v. REMI Cap., Inc.*, 49 F.4th 360, 364 (3d Cir. 2022) (Rule 60(b)); *Nelson v. Pennsylvania*, 549 F. App'x 116, 117 (3d Cir. 2014) (Rule 60(a)); *D'Argenzio v. Bank of Am. Corp.*, 877 F. Supp. 2d 202, 206 (D.N.J. 2012) (Local Civil Rule 7.1(i)).

The parties therefore face an uphill battle in seeking discretionary relief from a decision that was itself discretionary and a matter of equity. Upon review of the February 29, 2024 opinion and cited reports and testimony, I decline to reconsider or correct Judge Hillman's decision. *See Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Platkin*, Case Nos. 18–10507, 22–04360, 22–04397, 2024 WL 3759686, at *2 (D.N.J. Aug. 12, 2024) ("[T]he Court should not and will not sit in judgment over another judge's final decision. That is the Third Circuit's role." (discussing a potential motion for reconsideration)).

### A.  Plaintiff's Motion for Reconsideration

#### 1.  Party Arguments

Plaintiff asserts that Judge Hillman arrived at the disgorgement sum by assessing the theories proposed by defendant's expert, Brett A. Margolin, Ph.D., and rejected all but one of these theories—a repeat-purchaser theory that applied only to a subset of defendant's products, B-Line dispensing guns. (ECF No. 459–1 (Pl.'s Mot. Br.) pp. 5, 6.) Margolin's repeat-purchaser theory was inapplicable to other products and the Court expressly rejected a price-differential theory that Margolin sought to apply. (*Id.* pp. 6, 8, 9.) The unintentional and computational nature of the alleged error is evident by Judge Hillman not explaining why it would be equitable for defendant to retain the profits from its other products rather than disgorge them. (*Id.* p. 12.) A correction may be made by subtracting total sales of non-B-Line guns in Exhibit D(a) of Margolin's report from the non-B-Line sales already included in the Court's award, totaling an additional $4,610,440. (*Id.* pp. 12–14.) In its reply, plaintiff rebuts defendant's arguments that a larger disgorgement sum would be punitive and that it is relying on data that was not in evidence—reiterating that it seeks to give effect to Judge Hillman's intent. (Pl.'s Reply Br. pp. 5–9.)

Defendant responds that Judge Hillman exercised discretion in using Margolin's figures, which limited the universe of products to those deemed by plaintiff to be functionally competitive. (Def.'s Opp. Br. pp. 8, 9.) Limiting the universe of sales in this manner was consistent with the Court's equitable powers and no mathematic error was committed. (*Id.* p. 10.) Relief pursuant to Rule 60(a) would be inappropriate, according to defendant, because plaintiff seeks to attack the merits of Judge Hillman's decision rather than correct a scrivener's error. (*Id.* pp. 5, 12, 13.) This is evidenced by its attempt to recover an additional award of more than $4.5 million. (*Id.* p. 5.) Similarly, defendant argues that plaintiff has not identified new evidence, an intervening

change in law, or a legal error amounting to a manifest injustice warranting relief under Local Civil Rule 7.1(i).  (*Id.* pp. 13, 14.)

### 2.  <u>Analysis</u>

Plaintiff does not reference an intervening change in controlling law or new evidence, so the question presented is whether there has been a clear error of law or fact or need to prevent a manifest injustice.  *See Rich*, 294 F. Supp. 3d at 272.  I concluded that there has not.

Judge Hillman's disgorgement decision appears to have tracked Exhibit F(a) of Margolin's report and the following testimony of December 14, 2023.

> So, Your Honor, this is—this is where I try to give you the array of different calculations that, based on your findings at the end of trial here, you may choose to pursue.  Okay?  So staying in the blue, we've got Albion label.  We've got private label.  So you can either award just on Albion, if you decide private label isn't subject to the actionable statements, or you can add the two columns together.  Right?  So if you wanted to award on all imported guns, that's $7.7 million in sales times 13 percent of sales is $1 million in profit disgorgement.  Right?  So I'm going from the top box to the bottom box.  Right?  The top line, "All Imported Guns," and then in the other box, "All Imported Guns."  If you wanted to restrict just those guns that are economically competitive but you're not going—you don't want to restrict it to just repeat purchasers of B-Line, then you would do 1.83 million in sales and $238,000 in profit disgorgement. If you said I'm not buying Margolin's price difference argument—right?—I don't care if there's a 50 percent price difference between the Albion product and the Newborn competitive product, I am still going to award damages against that Albion product—excuse me—not damages—disgorgement, then that—again, that 1.8, again, becomes the 238.  Excuse me.  So if you follow up, I don't buy the pricing, but I do buy the repeat purchasers of B-Line, right?  These consumers revealed their preference that their purchasing decision is not related to country of origin because they purchased it a second time, then it's 1.35 million in sales and $176,000

7

> in disgorgement. And if you decide Margolin persuaded me that repeat purchasers of B-Line sales should be excluded because they don't—obviously didn't care about country of origin and anything priced at more than 15 percent should be excluded, 15 percent more than the Newborn competitive, because they're not competitive, then it's just $6,187 for Albion sales, for Albion-labeled sales. And, obviously, the next three columns read the same way. And I guess caution that if you choose to include private label, make sure you add columns one and two in the blue, or one and two in the green, depending on what functional definition you use.

(ECF No. 442 (Dec. 14, 2023 Trial Tr.) pp. 243:15 to 245:7.)

Judge Hillman's opinion noted that some of the figures referenced in Margolin's testimony did not match Exhibit F(a) of his report and chose to rely on the report's higher starting figures. (Feb. 29, 2024 Op. p. 23 n. 5) Nonetheless, the analysis proceeded along Margolin's exhibit and testimony. Judge Hillman first agreed that excluding repeat sales of B-Line products was warranted and reduced applicable net sales from $10,253,688 down to the $1,614,427 ultimately found to be subject to disgorgement. (*Id.* pp. 22–24.) Judge Hillman then declined to exclude sales for products Margolin deemed to not be economically competitive with plaintiff's products. (*Id.* pp. 24–26.) Lastly, Judge Hillman chose not to exclude private-label sales and a further deduction premised on product price premiums—maintaining the $1,614,427 pre-interest sum. (*Id.* pp. 26–28.)

It was while analyzing Margolin's economic-competitiveness argument that Judge Hillman found that such a deduction "would risk, at least in some instances, unjustly giving [defendant] the benefit of excluding relevant products based on markups." (*Id.* p. 25.) Plaintiff seizes on this passage, arguing that, despite rejecting the economic-competitiveness argument, Judge Hillman relied on figures from which Margolin already excluded relevant sales. (ECF 459–1 pp. 8, 9.)

It appears clear, however, that the relied-upon reasoning was offered in the context of Exhibit F(a) and related testimony. Plaintiff seeks a larger disgorgement sum by referring to figures included in Exhibit D(a) of Margolin's report (*id.* pp. 13, 14), which was not referenced in Judge Hillman's opinion. There is no indication that Judge Hillman did not review the entirety of the parties' experts' testimony and reports or overlooked a key factual or evidentiary issue. Rather, in exercising his discretion, Judge Hillman chose to rely on one presentation of relevant data over others.

Even if an error of law or fact was made, plaintiff has not and cannot demonstrate that it was dispositive. *See Andreyko*, 993 F. Supp. 2d at 478. Removing any doubt, Judge Hillman acknowledged his discretion in adjusting disgorgement awards and expressly stated that he believed $1,614,427 to be equitable and that he would have been inclined to adjust a significantly larger or smaller sum. (Feb. 29, 2024 Op. pp. 21 n. 4, 28.) Plaintiff seeks to nearly quadruple the underlying disgorgement sum to $6,224,867 plus interest. (Pl.'s Mot. Br. p. 14.) Judge Hillman's opinion makes clear that—even if he had arrived at such a figure—it would have been adjusted downward to a sum he believed to be equitable, in the range of what was ultimately awarded.

To the extent that plaintiff premises its motion on Rule 60(a), it fails for similar reasons. "The types of oversights or omissions subject to correction by Rule 60(a) are such inadvertent mistakes made by the Court, which clearly contradict the intentions of the Court, as easily identified by other indications in the record." *Daiichi Sankyo v. Mylan Pharms. Inc.*, Case Nos. 06–03462, 07–03039, 08–02752, 2016 WL 6138241, at *4 (D.N.J. Oct. 20, 2016). Plaintiff seeks a good bit more here.

In order to accept plaintiff's argument, I would have to find that Judge Hillman intended to provide a disgorgement award quadruple the amount of the one provided but simply failed to do so "through oversight or confusion."

9

(Pl.'s Mot. Br. p. 8.)   There is no indication that Judge Hillman relied upon the figures cited by plaintiff or contemplated a disgorgement sum near the requested amount.   To the contrary, Judge Hillman expressly stated that he would have exercised his discretion in adjusting an award of that size downward.   (Feb. 29, 2024 Op. pp. 21 n. 4, 28.)   Plaintiff's motion does not seek to correct a mindless or mechanical mistake or make a small adjustment in facts, but rather reevaluate the substance of Judge Hillman's opinion.   *See Gutierrez*, 743 F. Supp. 2d at 422; *see also Days Inns Worldwide, Inc. v. JPM, Inc.*, Case No. 13–03017, 2015 WL 5474882, at *3–4 (D.N.J. Sept. 15, 2015) (noting that it intended not to award liquidated damages and finding that, while the plaintiff could argue against that decision, Rule 60(a) was an inappropriate vehicle in which to do so).   Therefore, plaintiff's motion will be denied.

### B.   Defendant's Motion to Correct

#### 1.   Party Arguments

Defendant argues that the disgorgement order must be corrected because the Court mistakenly awarded total sales revenue while disgorgement awards must consider costs and other deductions to arrive at a profit figure.   (Def.'s Mot. Br. p. 4.)   Joseph Lesovitz's, plaintiff's expert, report and testimony detailed defendant's costs, which Margolin did not dispute.   (*Id.* p. 9, Def.'s Reply Br. pp. 7, 8.)   Defendant also references Exhibit D of Margolin's report, which included the profit margins of various products.   (Def.'s Mot. Br. p. 9.) The Court's error may be corrected, using Lesovitz's math, by multiplying the $1,614,427 by between 50 and 56.5 percent, according to defendant.   (*Id.* pp. 9, 10.)

No error in failing to deduct costs was made, according to plaintiff, because Judge Hillman expressly concluded that defendant failed to establish its costs. (Pl.'s Opp. Br. pp. 7, 8.)   Under the Lanham Act, it was plaintiff's burden to

prove defendant's sales and defendant's burden to subtract costs and other deductions. (*Id.*) Upon a finding that defendant failed to establish its costs, the Court was free to not make unproven deductions. (*Id.* pp. 8, 9.)

### 2. Analysis

Defendant contends that it was clear error not to multiply the sales subject to disgorgement by a profit margin of 50 to 56.5 percent. (Def.'s Mot. Br. pp. 9, 10.) Under the Lanham Act, a plaintiff may recover a defendant's profits, damages sustained by plaintiff, and costs. 15 U.S.C. § 1117(a). In calculating the defendant's profits, it is the plaintiff's burden to prove the defendant's sales and the defendant's burden to prove costs and other deductions. *Id.*; *Juul Labs, Inc. v. 4X PODS*, 509 F. Supp. 3d 52, 71–72 (D.N.J. 2020). The parties do not dispute this standard, but rather its application in the Court's opinion.

Judge Hillman concluded that defendant "fail[ed] to meet its burden as to costs." (Feb. 29, 2024 Op. p. 28.) Instead, he found that defendant "met most, but not all, of its heavy burden" in proving costs and deductions by "[f]ocus[ing] its rebuttal not on costs associated with … sales … but rather the lack of competition among products and consumer confusion." (*Id.* pp. 20, 21.) In other words, Judge Hillman interpreted the evidence and arguments presented by defendant as primarily focused on seeking to deduct sales unattributable to any wrongdoing. That gambit did not completely pay off.

Defendant references margin figures put forth by Margolin as well as the "detailed calculation of [defendant's] costs for the associated products" in Lesovitz's report. (Def.'s Mot. Br. pp. 9, 10, Def.'s Reply Br. pp. 7, 8.) Indeed, Exhibits D(a) and D(b) of Margolin's report referenced various profit margins for sets of products based on categories of origin and competitiveness. (ECF No. 426–1 p. 38, 39.)

Lesovitz's testimony discussed defendant's profit margins with and without the products at issue, defendant sales and cost data relied upon, and

unit costs for each applicable product of defendant. (ECF 439 pp. 138:17 to 147:17.) Margolin testified in response that he did not find it necessary to analyze individual products by costs and sales to develop his analysis. (Dec. 14, 2023 Trial Tr. p. 207:12–21.) He, instead, focused on liability-trial testimony that consumers would pay up to a 15-percent premium for American-made products, equating to a 13-percent increase in profit margin subject to disgorgement.

This issue of "Profit Analysis in Disgorgement" in defendant's proposed findings of fact similarly did not focus on costs associated with manufacturing applicable products. (ECF No. 455 (Def.'s Proposed Findings of Fact) p. 31.) Rather, defendant argued that trial testimony supported that no consumer would pay more than a 15-percent premium for American-made products, which equates to a 13-percent profit margin. (*Id.*) Therefore, any sales subject to disgorgement ought to have been multiplied by 13 percent, according to defendant. (*Id.* pp. 31, 32.) Judge Hillman rejected this theory. (Feb. 29, 2024 Op. p. 27.) Defendant's proposed findings of fact and conclusions of law did not otherwise address deductible costs. (Def.'s Proposed Findings of Fact, ECF No. 455–1.)[2]

Judge Hillman concluded that the evidence presented was insufficient to satisfy defendant's burden as to costs and declined to further reduce the disgorgement sum. "Courts' reliance on gross sales without deducting costs when the infringer fails to meet his or her burden is an available remedy, and some courts have held that gross sales must be relied upon despite the 'windfall to the [trademark] owner.'" *Zinn v. Seruga*, Case No. 05–03572, 2009 WL

---

[2] Insofar as defendant anticipated that the Court would rely on Lesovitz's testimony and report in calculating its disgorgement sum, it also sought to have the Court disregard Lesovitz's opinion due to his assumptions on competition and improper marking and other considerations. (Def.'s Proposed Findings of Fact pp. 33, 34.)

3128353, at *34 (D.N.J. Sept. 28, 2009) (alteration in original) (internal quotations omitted) (quoting *Am. Taxi Dispatch, Inc. v. Am. Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1008 (N.D. Ill. 2008)); *see also Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 177 (3d Cir. 2005) (noting that, because the defendant failed to prove costs, the district court was forced to use an alternative method of estimating profits and did not abuse its discretion in relying on trial testimony that was not supported by direct evidence).

Defendant is correct (Def.'s Reply Br. pp. 6, 7)[3] that the court in *Zinn* did not ultimately award gross sales and instead relied on profit-margin testimony. 2009 WL 3128353 at *36. Judge Hillman, however, declined to follow suit—concluding that defendant failed to meet its burden and arriving at a disgorgement sum that he believed to be "an appropriate approximation of the equities as well as the considerations to be balanced." (Feb. 29, 2024 Op. p. 28.) A substantially higher or lower sum would have been increased or decreased at his discretion.

Insofar as defendant contends that it was a legal error to not further deduct costs, I conclude that such an error does not by itself justify relief under Rule 60(b). *Rich*, 294 F. Supp. 3d at 273. This is especially so in light of

---

[3] Defendant also cites *Covertech Fabricating, Inc. v. TVM Building Products, Inc.*, 855 F.3d 163 (3d Cir. 2017) for the proposition that an award of total sales cannot be provided under the Lanham Act. (Def.'s Reply Br. p. 6); *see also Covertech Fabricating, Inc.*, 855 F.3d at 177 ("Covertech's argument seems to be that if a plaintiff makes a showing of gross sales—even industry-wide sales, not limited to the infringing product—and a defendant then fails to offer a rebuttal, it is within the district court's discretion to award as 'actual profits' any dollar amount up to 100% of those gross sales. Covertech is mistaken."). *Covertech Fabricating Inc.* is somewhat distinguishable from the case at bar as, absent evidence of the defendant's profits from sales of infringing products, the district court relied on defendant's total industry sales. 855 F.3d at 176. Here, Judge Hillman relied on Margolin's sales data and deductions. To the extent that it was an abuse of discretion not to further deduct costs, I find that Rule 60(b) is an inappropriate avenue for relief.

Judge Hillman's long history with the case and clear contemplation of the relevant evidence and equities. I decline to replace his discretion in awarding relief with my own. *See Ass'n of N.J. Rifle & Pistol Clubs, Inc.*, 2024 WL 3759686, at *2.

### IV. CONCLUSION

For the reasons set forth above, plaintiff's motion for reconsideration (ECF No. 459) and defendant's motion to correct (ECF No. 466) will both be DENIED. Defendant's motion to seal (ECF No. 488) will be administratively terminated pending appeal. An appropriate order accompanies this opinion.

                                               */s/ Edward S. Kiel*
                                               **EDWARD S. KIEL**
                                               **UNITED STATES DISTRICT JUDGE**

Dated: October 10, 2024