## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr><td>

**NEWBORN BROS. CO., INC.,**

      **Plaintiff,**

    v.

**ALBION ENGINEERING COMPANY,**

      **Defendant.**

</td><td>

**Case No. 12–cv–02999–ESK–AMD**


**OPINION**

</td></tr>
</table>

**KIEL, U.S.D.J.**

After 12 years of litigation and three stages of trial, plaintiff Newborn Bros. Co., Inc. prevailed, entitling it to disgorgement of defendant Albion Engineering Company's profits and injunctive relief. That injunctive relief included new country-of-origin labeling on Albion products and notice to distributors of the Court's findings. Understandably eager to see the fruits of its victory, Newborn representatives visited Albion displays at select distributors only to find legacy products remaining and no notices of the Court's findings posted. Disappointed to find that the terms of the order—or the third-party responses thereto—were not what it had hoped, Newborn points the finger at Albion's alleged contempt. But the injunction order promised Albion's cooperation in correcting market confusion, not desired results in the eyes of distributors and customers. Because Newborn's allegations of contempt make promises its supporting evidence fails to keep, its motion to hold Albion in contempt (ECF No. 494 (Contempt Mot.)) will be denied.

## I.    FACTS AND PROCEDURAL HISTORY

### A.    The Injunction Order

This case centers on the origin of Albion's caulking guns.   In an August 22, 2020 opinion and order, Judge Noel L. Hillman (Ret.) determined that several of Albion's statements as to the origins of its products were actionable under the Lanham Act and common law and injunctive relief and disgorgement of profits were warranted.   (ECF No. 363; ECF No. 364.)   Judge Hillman later limited relief to actions made by Albion after February 7, 2007, citing Newborn's unclean hands.   (ECF No. 410; ECF No. 411.)

Judge Hillman held evidentiary hearings on injunctive relief in November and December 2023 (ECF No. 429; ECF No. 430; ECF No. 433) followed by a bench trial on disgorgement in December 2023 (ECF No. 438; ECF No. 440; ECF No. 441; ECF No. 447).   A February 29, 2024 opinion and order followed. (ECF No. 457 (Feb. 29, 2024 Op.); ECF No. 458 (Feb. 29, 2024 Order).)   Judge Hillman ruled that, despite Albion's efforts to correct market confusion, "the harms caused by its violative conduct remain imminent to the extent that they are ongoing." (Feb. 29, 2024 Op. p.40.) Therefore, in addition to disgorgement of Albion's profits,[1] Judge Hillman

> ORDERED that within ninety days of this order, Albion shall mail a letter and a copy of this order to each distributor it has sold a caulking gun to within the past five years, with the letter stating that it is acting pursuant to this Court's order; requesting the return to Albion of any samples, displays, other materials referencing "Phila. PA." or referring to Albion caulking guns as being "Made in USA," and any physical B-Line guns, whether operative or

---

[1] Judge Hillman withheld judgment until resolution of Newborn's then-forthcoming application for attorney's fees. (Feb. 29, 2024 Op. p.32.)  Newborn moved for attorney's fees on May 29, 2024.  (ECF No. 480.)  I administratively terminated the motion due to concerns with the Court's continuing jurisdiction pending appeal.  (ECF No. 483.)   Following the Third Circuit's affirmance of Judge Hillman's opinion and order (ECF No. 505 (Third Circuit Mandate)), Newborn filed a renewed motion for attorney's fees (ECF No. 507) that will be considered in due course.

not, which contain labeling describing Albion as an American manufacturer; and offering to replace such materials at its cost; and it is further

ORDERED that each letter shall further be accompanied by notices—printed on durable cardboard or plastic and sized at least eight inches by ten inches—in sufficient quantity to be placed at each location Albion products are displayed at the distributor, and which shall read:

> NOTICE REGARDING COUNTRY OF ORIGIN OF ALBION ENGINEERING CAULKING GUN PRODUCTS
>
> A judge of the United States District Court for the District of New Jersey has ruled that Albion Engineering Corp. has previously misrepresented that certain products were "Made in USA," through product mismarking and statements in advertising, promotional materials, websites, and to customers. *Newborn Brothers Co. Inc. v. Albion Engineering Co.*, No. 12–Civ–2999 (NLH).
>
> The Court has ordered Albion to comply with all applicable country-of-origin marking and disclosure requirements. The Court has ordered Albion to provide to its distributors copies of this notice so that they may be displayed at all distributor sales locations.
>
> ; and it is further

ORDERED that within 120 days of this order, Albion shall file on the docket a list of distributors to whom letters, orders, and notices were sent; the dates they were sent; and the number of notices sent to each distributor; and it is further

ORDERED that, until such time that Albion seeks and receives confirmation from United States Customs and Border Protection as to the marking requirements of its specific manufacturing processes, the packaging of each Albion caulking gun with any foreign component shall list

each component of the caulking gun and its country of origin ….

(Feb. 29, 2024 Order pp. 1–3.)

### B.    Procedural Aftermath

Newborn and Albion moved for reconsideration and to correct, respectively, to adjust the disgorgement award.   (ECF No. 459; ECF No. 466.) Albion also appealed (ECF No. 463) and moved to stay injunctive relief (ECF No. 469).   While these motions were being filed, the was case reassigned to me. (ECF No. 464.)   I denied Albion's motion to stay (ECF No. 478; ECF No. 479) and the parties' motions seeking to adjust the disgorgement award (ECF No. 491 (Oct. 10, 2024 Op.); ECF No. 492).

Following my denial of Albion's motion to stay, the parties stipulated to a 21–day extension for Albion to mail letters, copies of the order, and notices to applicable distributors.   (ECF No. 481.)   I so-ordered the stipulation.   (ECF No. 482.)[2]   Consistent with the injunction order and stipulation, Albion provided sealed and redacted versions of the list of distributors to which it had sent letters, orders, and notices.   (ECF No. 486 (Albion Mailing List); ECF No. 487.)   The pending motion followed.   (Contempt Mot.)

The motion was preceded by visits to 50 distributors by three Newborn representatives between May 22, 2024 and September 12, 2024.   Brian Glass, vice president for industrial sales, states in an affidavit that none of the 10 distributors he visited posted notices and representatives from four of the distributors received Albion's letter but either disregarded or discarded it. (ECF No. 494–2 (Glass Aff.) p. 2.)   Two distributors allegedly displayed

---

[2] Despite agreeing to Albion's request for a 21–day extension and the Court's acceptance of that stipulation, one of the purported examples of contempt cited by Newborn occurred on May 22, 2024, a week before the original deadline.   (ECF No. 494–4 (Higgins Aff.) p. 6.)   15 others occurred within two weeks of the new, stipulated mailing deadline.   (*Id.*)   The Court presumes that these examples were included in error and are not indicative of bad faith or gamesmanship by Newborn.

caulking guns without country-of-origin markings. (*Id.*) Independent sales representative Dell Skluzak provides that none of the five distributors he visited displayed notices. (ECF No. 494–3 (Skluzak Aff.) p.2.) Three distributor representatives reportedly stated that they received Albion's letter, but disregarded or discarded it, one did not receive the letter, and one was unsure if they received the letter. (*Id.*) Skluzak also observed a caulking gun in Anaheim, California stamped to indicate American manufacture. (*Id.* p.2.) Photos from this same distributor were submitted into evidence during the injunction hearing. (*Id.* pp.2, 3.)

Finally, Elizabeth Higgins, sales and marketing coordinator, reports that representatives from 14 of the distributors she visited claimed not to have received the letter, 14 others were unsure, and 16 distributors possessed caulking gun boxes or packaging that did not have required country-of-origin markings. (Higgins Aff. p.3.) Higgins entered her, Glass, and Skluzak's experiences visiting and interacting with distributor representatives into a spreadsheet. (*Id.* pp.6–9.) Each also provided photographs supporting their assertions. (*Id.* pp.10–24; Glass Aff. pp.3–7; Skluzak Aff. pp.4–11.)

Albion responded to the pending motion in an opposition (ECF No. 501 (Albion Opp'n Br.)) to which Newborn replied (ECF No. 502 (Newborn Reply Br.)). After the motion was fully briefed, the Third Circuit Court of Appeals affirmed Judge Hillman's orders as well as my order declining to adjust the disgorgement sum. (Third Circuit Mandate .)[3]

---

[3] Newborn's moving brief argues that, even absent a finding of contempt, the Court may provide relief or modify the February 29, 2024 order. (ECF No. 494–1 (Newborn Mot. Br.) pp.33–35.) Albion dedicates part of its opposition to the argument that the Court did not then have jurisdiction to modify the order pending appeal. (Albion Opp'n Br. pp.22, 23.) This impediment no longer exists following the Third Circuit's affirmance.

5

## II.    STANDARD AND PARTY ARGUMENTS

### A.    <u>Contempt Motions</u>

In order to find a party in civil contempt, a court must find that (1) a valid order existed, (2) the party against whom contempt is sought had knowledge of the order, and (3) the party against whom contempt is sought disobeyed the order.    *See Am. Bd. of Surgery, Inc v. Lasko*, 532 F. App'x 66, 69–70 (3d Cir. 2013).    Contempt must be supported by clear and convincing evidence.    *Id.* at 69.    Evidence is clear and convincing if it is "so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."    *Jones v. Brown*, 425 F. App'x 93, 96 (3d Cir. 2011) (alteration in original) (quoting *Matter of Jobes*, 529 A.2d 434, 441 (N.J. 1987)).

The burden is on the movant in contempt proceedings.    *Lawn Doctor, Inc. v. Rizzo*, 646 F. App'x 195, 201 (3d Cir. 2016).    Ambiguities in the relevant order are to be resolved in favor of the party against whom contempt is sought.    *Am. Bd. of Surgery*, 532 F. App'x at 70.    District courts possess significant discretion in determining whether to hold a party in contempt.    *See Marshak v. Treadwell*, 595 F.3d 478, 485 (3d Cir. 2009) (noting that contempt decisions are reviewed for abuse of discretion).    Contempt decisions will only be reversed when they are based on an error of law or clearly erroneous finding of fact.    *Id.*

### B.    <u>Party Arguments</u>

The February 29, 2024 order is clear and valid, according to Newborn, as Judge Hillman concluded that the equities favored injunctive relief and crafted an order to correct ongoing misrepresentation in the market.    (Newborn Mot. Br. pp. 24–26.)    Photographs and accounts from distributor visits demonstrate a lack of compliance, frustrating the Court's intent.    (*Id.* pp. 26, 27.)    Albion violated the order by not mailing the required letter, order, and notices to each distributor within 90 days and not requesting the return of samples, displays,

and other materials indicating American manufacture.  (*Id.* p.27.)  Newborn points to its representatives finding just one posted notice among the 50 distributors visited, with that one notice placed adjacent to a Newborn display as opposed to an Albion display.  (*Id.* pp.28, 29.)  Representatives also did not find any Albion caulking guns with the country of origin of all components listed, while guns indicating American manufacture were located.  (*Id.* p.29.) Newborn states that substantial compliance is insufficient and Albion's letter to distributors should be produced and its practices examined to determine whether distributor compliance was discouraged.  (*Id.* pp.31, 32.)  Finally, even if the Court is not inclined to find Albion in contempt, it may still provide relief or—alternatively—modify the order to combat continuing misrepresentations in the market.  (*Id.* pp.33–35.)

Albion responds that it made required mailings to 560 American distributors and 33 Canadian distributors as reflected in its filing at ECF No. 486.  (Albion Opp'n Br. pp.12, 13.)  The accompanying letters advised that Albion was acting pursuant to a court order and offered to replace samples, displays, and other materials at its expense.  (*Id.* pp.13, 14.)  The Newborn representatives' affidavits do not indicate whether the distributors were purchasers within the past five years or the individuals spoken with had authority to post or not post the notices or speak on behalf of the distributors. (*Id.* pp.14–18.)  Rather, Newborn's evidence demonstrates third parties not subject to the order making independent decisions.  (*Id.* pp.15, 16.)  Albion representatives visited the distributors identified by Newborn and were unable to locate the lingering legacy products, indicating that any potential contempt has been purged.  (*Id.* pp.16, 17.)

Albion also argues that the terms of the order did not require it to recall any delivered products or modify existing inventory.  (*Id.* pp.18–20.)  Albion has updated packaging to include labels identifying origins of component parts

or to read "Made in Taiwan." (*Id.* p.20.) Lastly, Albion submits that Newborn fails to show that it suffered any actual loss and thus monetary sanctions must be denied even if it is in contempt. (*Id.* p.22.)

### III. DISCUSSION

The parties' briefing does not dispute the validity of the February 29, 2024 order or Albion's knowledge of it. Rather, whether Albion may be found in contempt turns on the third factor, whether Albion disobeyed the order. The Court places Albion's alleged noncompliance in two categories—the order's mailing requirements and the order's labeling requirements—and addresses them in turn.

### A.     The Order's Mailing Requirements

Newborn's arguments related to the mailing of letters, copies of the February 29, 2024 order, and sufficient notices center largely on the lack of notices placed with Albion displays at the 50 distributors visited and some representatives' lack of knowledge of the letter, order, or notices. In other words, if there is smoke, there must be fire.

Insofar as Newborn representatives were informed by distributor representatives that letters, orders, and notices were received, but notices were nonetheless not posted, such evidence does not necessarily indicate contempt. For instance, the Glass affidavit states that four distributor representatives reported that they received notices from Albion but disregarded or discarded them. (Glass Aff. p.2.) Skluzak attests that three distributor representatives stated that they received notices but disregarded or discarded them. (Skluzak Aff. p.2.)

The February 29, 2024 order required Albion to "mail a letter and a copy of th[e] order to each distributor it has sold a caulking gun to within the past five years, with the letter stating that it is acting pursuant to this Court's order …." (Feb. 29, 2024 Order p.1.) The letter was to "be accompanied by

notices—printed on durable cardboard or plastic and sized at least eight inches by ten inches—in sufficient quantity to be placed at each location Albion products are displayed at the distributor." (*Id.* p. 2.)   Anecdotes such as "[f]our … of the distributors said that they had received the letter and notice but advised … that they either threw the notice away or decided not to post it" (Glass Aff. p. 2) logically indicate compliance by Albion.

Newborn advances that the lack of notices posted at the distributors evidences contempt (Newborn Mot. Br. p. 28) and efforts by Albion to subvert the intent of the order (Newborn Reply Br. pp. 13, 14).   Newborn's quarrel is not with Albion, but with the distributors and their reactions.   Whether a person or entity maybe held in contempt of an injunction order is governed by Federal Rule of Civil Procedure 65(d).   *Marshak*, 595 F.3d at 486.   Rule 65(d), in turn, states that injunction orders bind only the parties; the parties' officers, agents, servants, employees, and attorneys; and "other persons who are in active concert or participation with" the first two categories.   Fed. R. Civ. P. 65(d)(2).   There is no indication that the distributors who have chosen not to display notices fit within any of these groups.

Similarly, Dean Hammel, president of Albion, states in a declaration that Albion has mailed under his signature the requisite letters, orders, and notices to the corporate headquarters of each distributor it sold a caulking gun to in the preceding five years.   (ECF No. 501–1 (Hammel Decl.) pp. 1, 2.)   The number of notices provided was premised on the number of show rooms of each distributor.   (*Id.* p. 2.)   Newborn's representatives' affidavits reporting that some of the distributor representatives stated that they had not received the letter, order, and notices—or were unsure whether they received them (Skluzak Aff. p. 2; Higgins Aff. p. 3)—do little to contradict Hammel's declaration or demonstrate contempt.

For instance, the spreadsheet included in the Higgins affidavit provides a column for contacts (Higgins Aff. pp. 6, 7), but it is unclear whether these contacts are Newborn's regular contacts with the distributor or the individuals with whom Newborn representatives spoke on the given date. It is further unclear whether these individuals would be aware of mailings sent to distributor headquarters. Rather than clear, direct, and weighty evidence that would lead the Court "to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue," *Jones*, 425 F. App'x at 96 (quoting *Matter of Jobes*, 529 A.2d at 441), Newborn's arguments as supported by the affidavits leave the Court unconvinced that the order has been disobeyed.

Perhaps acknowledging potential weakness in its arguments, Newborn flips the script. Newborn suggests that addressing letters to specific individuals at distributors would have increased the likelihood of them being read. (Newborn Mot. Br. p. 32.) If Albion has complied with the order, it should produce evidence demonstrating so, according to Newborn, including a copy of its letter to distributors. (*Id.*; *see also* Newborn Reply Br. p. 10 (suggesting that the Court conduct a hearing requiring Albion to support its declarations).)

The course for which Newborn advocates would, in the Court's view, impermissibly shift the burden to Albion to prove that it did not violate the order. *See Lawn Doctor*, 646 F. App'x at 201 (concluding that the district court erred in placing the burden on the alleged contemptuous parties to show that they did not transfer a customer list). Newborn's request is especially inappropriate given its own failure to provide clear and convincing evidence of contempt. *See N.J. Bldg. Laborers Statewide Ben. Funds and Trs. Thereof v. Torchio Bros., Inc.*, Case No. 08–00552, 2009 WL 368364, at *3 (D.N.J. Feb. 11, 2009) (stating that, after the movant has established clear and convincing evidence of a violation of the applicable order, the burden shifts to the

10

nonmovant to provide proof beyond a mere inability to comply).   Newborn's motion will therefore be denied to the extent it asserts that Albion has failed to comply with mailing requirements.[4]

### B.   The Order's Labeling Requirements

Newborn also asserts that Albion is in contempt of the February 29, 2024 order due to the presence of legacy products indicating American manufacture at distributors and Albion's purported failure to relabel its inventory.   The Court addresses these related contentions in order.

Newborn's representatives located legacy Albion products without relevant country-of-origin markings in 18 of the 50 distributors visited. (Newborn Mot. Br. p. 29.)   This while some distributors continued to display Albion caulking guns indicating American manufacture.   (*Id.*)   The

---

[4] Newborn raises for the first time in its reply brief that the 593 distributors and 3,784 notices purportedly mailed represent approximately half the number of distributors previously referenced by Albion owner Mark Schneider.   (Newborn Reply Br. pp. 7, 8.)   Specifically, when asked for a "ballpark figure" of how many distributors Albion currently had, Schneider responded during the November 30, 2023 hearing that the number was approximately 1,100 distributors with 7,500 physical locations.   (ECF No. 450 p. 157:7–20.)   Newborn posits that if the distributor headquarters to which letters, orders, and notices were mailed were not the distributors to which Albion had sold caulking guns, this would provide an independent reason to find Albion in contempt. (Newborn Reply Br. p. 9.) Some multibranch distributors permit individual branches to purchase caulking guns directly, meaning that Albion failed to comply with the order insofar as it sent notices to distributor headquarters.   (*Id.* pp. 9, 10.)   The Court need not consider this argument because "[i]t is usually improper for a moving party to shift gears and introduce new legal arguments in the reply brief." *See Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 543 (D.N.J. 2013). While Newborn's reply brief responds to the Hammel declaration included in Albion's opposition, any discrepancy between the number of letters, orders, and notices sent and the figures to which Schneider testified was known after Albion filed its list of distributors to whom materials were mailed.   (Albion Mailing List.)   Therefore, even if the Court were to adopt the Schneider estimate and be willing to speculate as to a violation of the order based on the differing figures, that argument has been waived. *See Krys v. Aaron*, 112 F. Supp. 3d 181, 197 n.18 (D.N.J. 2015) ("The Court will … deem arguments made for the first time in reply waived.").

representatives support their assertions with images. (Glass Aff. pp. 3–7; Skluzak Aff. pp. 4–7; Higgins Aff. pp. 10–24.) Albion representatives state that they attempted to locate the lingering legacy caulking guns photographed by Newborn representatives but the items were no longer at the identified distributors. (ECF No. 501–2 p. 2; ECF No. 501–3 p. 2; ECF No. 501–4 p. 1.) Albion asserts that, if lingering legacy products could evidence its contempt, that contempt has nevertheless since been purged. (Albion Opp'n Br. pp. 16, 17.)

More persuasive in the Court's view is whether the presence of legacy products at distributors—particularly in the months immediately following the February 29, 2024 order—evidences contempt at all. The February 29, 2024 order directed Albion to include in its letter to distributors a request that they return any samples, displays, and B-Line caulking guns and other materials indicating American manufacture. (Feb. 29, 2024 Order pp. 1, 2.) Albion was to offer to replace such items at its cost. (*Id.* p. 2.) Plainly, Albion was ordered to make the request and offer replacements at its cost, not compel distributors' acceptance.

Therefore, presuming that these legacy caulking guns were present at the distributors prior to the order—and there is no evidence otherwise—the distributors themselves bear responsibility for their continued presence. The Court will not extend application of the order to distributors for the same reasons described above. In the same vein, the presence of legacy caulking guns is generally not synonymous with violation of the order absent clear and convincing evidence that Albion did not request return of these products and offer replacement at its cost. Newborn has not produced such evidence. Newborn may be frustrated or disappointed by distributors' delay or disinterest in accepting Albion's offer, but its relief is not in a contempt order.

Similarly, Newborn accuses Albion of failing to re-label its own inventory but rather affixing new country-of-origin labeling only to new packaging. (Newborn Reply Br. pp. 11, 12.) This failure is significant, according to Newborn, because "evidence presented at the evidentiary hearing establishes that Albion likely has a substantial inventory of unsold imported products and products containing foreign components." (*Id.* p. 12.)

But the February 29, 2024 order itself has no such requirement. Rather, the order states that "until such time that Albion seeks and receives confirmation from United States Customs and Border Protection as to the marking requirements of its specific manufacturing processes, the packaging of each Albion caulking gun with any foreign component shall list each component of the caulking gun and its country of origin …." (Feb. 29, 2024 Order pp. 2, 3.) Newborn is correct that this portion of the order does not provide an exception for existing Albion inventory (Newborn Mot. Br. p. 11), but it also does not expressly include such inventory. To the extent that the order can be read as not strictly forward-looking, the point at which Albion was to label products in accordance with the order is ambiguous. "[A]mbiguities in an order are construed in favor the charged party." *Am. Bd. of Surgery*, 532 F. App'x at 70.

Hammel states in his declaration that Albion caulking guns now bear either a "Made in Taiwan" label or label identifying each of its component parts if any of those parts are foreign-made. (Hammel Decl. p. 3.) The caulking guns photographed as part of Newborn's representatives' affidavits now bear "Made in Taiwan" labels, according to Hammel. (*Id.*) Hammel includes photographic examples of this new labeling. (*Id.* pp. 5–14.) The Court does not read the February 29, 2024 order to require more. Albion will thus not be found in contempt of the labeling portions of the order.

13

### C.   Relief Absent Contempt

Lastly, Newborn suggests that, even if the Court does not find Albion in contempt, it "may still exercise its compliance enforcement power to ensure that the corrective action terms which Judge Hillman specifically crafted are achieved." (Newborn Mot. Br. p. 34.)   Alternatively, it may modify the order to address continuing misrepresentations in the market.   (*Id.* pp. 34, 35.)   The Court declines to do so.

Judge Hillman shepherded this case over three stages of trial and nearly 12 years.   His decision and the relief provided have now been affirmed by the Third Circuit.   (Third Circuit Mandate.)   If it was Judge Hillman's intent to craft the order in such a way to further compel cooperation by the distributors themselves, he could have done so.   If it was Judge Hillman's intent to require Albion to re-label existing inventory, he could have done so.   He did not.

As stated previously, I am disinclined to modify or correct Judge Hillman's decision.   (Oct. 10, 2024 Op. p. 5.)   Judge Hillman's intent and exercise of discretion is best interpreted by the language he chose to use in the order and—as importantly—chose not to use.   "I decline to replace his discretion … with my own."   (*Id.* p. 14.)

### IV.   CONCLUSION

For the foregoing reasons, the Court concludes that Newborn has failed to support its allegations of contempt by clear and convincing evidence.   The motion at ECF No. 494 will therefore be **DENIED**.   An appropriate order accompanies this opinion.

/s/ Edward S. Kiel
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated:  March 25, 2026

14